FILED
2013 Jan-11 PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

JASON DANE HARRIS and RACHAEL MARIE DABBS HARRIS, as next friend of P.D.H., on behalf of themselves and all others similarly situated,

Plaintiffs

FISHER-PRICE, INC., MATTEL, INC., TARGET CORPORATION and TARGET CORPORATE SERVICES INC.,

Defendants.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

**CIVIL ACTION NO. CV:**

**CLASS ACTION COMPLAINT**

Plaintiffs Jason Dane Harris and Rachael Marie Dabbs Harris, as next friend of P.D.H. (the "Harrises"), individually and as representatives of the class defined herein, bring this action against Defendants Fisher-Price, Inc., Mattel, Inc. and Fisher-Price Brands US, as follows:

## I. Introduction

1. The Harrises received a gift of a Newborn Rock 'n Play Sleeper (the "Sleeper") in approximately July, 2012. The Sleeper was purchased at a store owned and operated by defendants Target Corporation and Target Corporate Services Inc. (collectively "Target"). The Harrises bring this action on behalf of themselves and all others similarly situated against Defendants for losses and damages arising out of the mold and other issues with the Sleeper.

2. On January 8, 2013, Fisher-Price Inc. and the U.S. Consumer Product Safety Commission ("CPSC") announced a voluntary recall of the Sleeper due to mold that develops between the removable seat cushion and the hard plastic frame of the Sleeper.

3. Over 600 reports of mold on the product have been received by Defendants and at least sixteen (16) consumers have reported that their infants have been treated for respiratory issues, coughs and hives after sleeping in the product.

4. P.D.H. has been treated for respiratory issues after sleeping in the product.

## II. Parties

5. The Harrises are Alabama residents who received the Sleeper as a gift. The Sleeper was purchased at a Target store in Alabama.

6. As a result of the events described herein, the Harrises have suffered ascertainable losses and damages.

7. Defendant Fisher-Price, Inc. ("FPI") is a New York corporation with its principal place of business in New York, doing business in the State of Alabama and throughout the United States. FPI is a subsidiary of Mattel, Inc.

8. At all times material hereto, FPI imported or manufactured entirely, the Sleeper.

9. Defendant Mattel, Inc. is a Delaware corporation with its principal place of business in El Segundo, California, doing business in the State of Alabama and throughout the United States.

10. Defendant Target Corporation is a Minnesota Corporation with its principal place of business in Minnesota, doing business in the State of Alabama and throughout the United States.

11. Defendant Target Corporate Services Inc. is a Minnesota Corporation with its principal place of business in Minnesota, doing business in the State of Alabama and throughout the United States.

## III. Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business.

13. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy.

14. This Court's venue over this action is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claim occurred here.

## IV. Factual Allegations

15. FPI is a wholly owned subsidiary of Mattel, Inc.

16. The Sleeper was manufactured and shipped to stores including those in Alabama (and the Target where the Harrises' Sleeper was purchased) for purchase for use by parents of infants up to 6 months of age.

17. The Sleeper is an infant recliner seat. The sleeper is designed for babies up to 25 pounds and is composed of a soft plastic seat held by a metal rocking frame. The Sleeper has a removable, fabric cover that is sold in 14 patterns and color palettes.

18. Since 2009, at least 800,000 Sleepers have been sold in stores and on-line.

19. Mold can develop on the product between the removable seat cushion and the hard plastic frame of the sleeper when it remains wet or moist or is infrequently cleaned.

20. The CPSC has advised that this mold has been associated with respiratory illnesses and other infections.

21. More than 600 complaints have been received as to mold on the Sleeper.

22. At least sixteen (16) consumers have reported that their infants have been treated for respiratory issues, coughs and hives after sleeping in the product.

23. The Sleeper was purchased at a Target store for use by the Harrises and the Harrises have used it for their son for use every day since his birth on July 27, 2012

24. Subsequently P.D.H. was hospitalized at Children's Hospital for 2 or 3 days when he was about 3 months old for Respiratory Syncytial Virus ("RSV") related to Bronchiolitis. He was given breathing treatments, put on oxygen and was placed under monitors for his breathing. His cough has not ceased since then. He has been placed on antibiotics, has had ear and eye infections and has had random vomiting.

## V. **Class Definition.**

25. Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

> All persons who bought or use for their infants, since September, 2009, a Newborn Rock 'n Play Sleeper who claim injury and/or damages as a result of the mold that has developed in the device.

26. Excluded from this Class are:

a. The officers and directors of any of Defendants;

b. Any judge or judicial officer assigned to this matter and his or her immediate family;

c. Any legal representative, successor, or assign of any excluded person or entities.

## VI. **Class Action Allegations**

27. Plaintiffs' claims are made on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

**A. Numerosity of the Class.**

28. On information and belief, the Class consists of hundreds or thousands of individuals and/or businesses who have been legally injured by the sleeper, making joinder impracticable.

**B. Typicality and Commonality.**

29. The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, have suffered adverse effects primarily caused by the defects in the Sleeper.

30. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all members of the Class.

**C. Adequacy.**

31. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting environmental, mass tort and complex class actions, including actions involving consumer products.

32. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

**D. Predominance of Common Questions of Fact and Law.**

33. There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a. Whether Defendants caused and/or contributed to the injuries;

b. Whether Defendants were negligent in the design and manufacture of the Sleeper;

c. Whether Defendants were negligent in the shipping and distribution of the Sleeper;

d. Whether the Defendants knew or should have known of the risk of a defect in the Sleeper such as that which causes it to develop mold from normal use;

e. Whether Defendants knew of, or should have utilized; any safety measures to prevent the growth of the mold;

f. Whether Defendants knew or should have known that their activities would cause damage to Plaintiffs;

g. Whether Defendants acted maliciously or with reckless disregard to the risk of mold creation; and

h. The amount of damages Plaintiffs and the Class Members should receive in compensation.

**E. Superiority.**

34. Absent class treatment, Plaintiffs and Class Members will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Without a class action, individual Class Members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights. Because of the ratio of the economic value of the individual Class Members' claims in comparison to the high litigation costs in consumer products liability cases such as this, few

could likely seek their rightful legal recourse. Absent a class action, Class Members would continue to incur harm without remedy.

36. The consideration of common questions of fact and laws will conserve judicial resources and promote a fair and consistent resolution of these claims.

**FIRST CLAIM FOR RELIEF**

**Negligence.**

37. The allegations in all previous paragraphs are incorporated by reference as though fully set forth here.

38. Defendants owed a duty to all Plaintiffs and Class Members to exercise reasonable care in the manufacture and distribution of the Sleeper.

39. Defendants had a heightened duty of care to all Plaintiffs and the Class Members because of the great danger associated with the Sleeper and the especially high risk of injury to infants.

40. Defendants breached that duty when they failed to take appropriate steps to ensure the safety and integrity of the Sleeper.

41. As a direct and proximate result of Defendants' failure take appropriate steps to ensure the safety of the Plaintiffs and the Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to diminution of value of real estate, loss of income and other economic loss, and loss of enjoyment of real property.

42. The injuries were caused by the joint negligence of the Defendants.

43. Upon information and belief, Plaintiffs allege that their injuries were the result of Defendants' joint negligence in:

a. Failing to properly manufacture and/or distribute the Sleeper;

b. Failing to properly inspect the Sleeper to assure that all parts were fit for their intended purpose;

c. Acting in a careless and negligent manner:

d. Failing to promulgate, implement, and enforce proper rules and regulations to ensure the safe manufacture and distribution of the Sleeper, which would have prevented the injuries;

e. Failing to take appropriate action to avoid or mitigate the defect;

f. Negligently implementing policies and procedures to safely manufacture and distribute the Sleeper;

g. Failing to ensure that the Sleeper was free from defects and/or in proper working order;

h. Failing to timely warn;

i. Failing to provide appropriate instructions;

j. Acting in a manner that justifies imposition of punitive damages; and

k. Such other acts and omissions as will be shown at the trial of this matter.

44. The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of these claims.

45. The injuries to Plaintiffs and the Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger of the mold.

46. Furthermore, the injuries would not have occurred had the Defendants exercised a high degree of care. Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

47. Plaintiffs and the Class Members are entitled to a judgment finding Defendants liable to Plaintiffs and the Class Members for damages suffered as a result of Defendants' acts and omissions.

## SECOND CLAIM FOR RELIEF

### Wantonness.

48. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

49. Defendants owed a duty to all Plaintiffs and Class Members to exercise reasonable care in the manufacture and distribution of the Sleeper.

50. Defendants had a heightened duty of care to all Plaintiffs and the Class Members because of the great danger associated with manufacturing items for infants.

51. Defendants breached their legal duty to Plaintiffs and the Class, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the property and economic interests of others, including Plaintiffs and the Class Members, in the negligent manufacture and distribution of the Sleeper.

52. Defendants knew or should have known that their wanton or reckless conduct would foreseeably result in defects in the Sleeper, causing injuries to the Plaintiffs and Class Members.

53. As a direct and proximate result of Defendants wanton or reckless conduct, Plaintiffs and Class Members have suffered legal injury and damages, in an amount to be proven at trial.

54. Defendants' wanton or reckless conduct, as described herein, entitles Plaintiffs and Class Members to punitive damages.

## THIRD CLAIM FOR RELIEF

### Negligence Per Se.

55. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

56. Defendants' conduct with regard to the manufacture and distribution of the Sleeper is governed by numerous state and federal laws, and permits issued under the authority of these laws.

57. These laws and permits create statutory standards that are intended to protect and benefit Plaintiffs and the Class Members.

58. Defendants' violations of these statutory standards constitute negligence per se under Alabama law.

59. Defendants' violations of these statutory standards proximately caused Plaintiffs' and the Class Members' injuries, warranting compensatory and punitive damages.

## FOURTH CLAIM FOR RELIEF

### Alabama Extended Manufacturer's Liability Doctrine.

60. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

61. Defendants designed, manufactured and/or supplied the Sleeper.

62. The Sleeper was defectively manufactured and/or designed because it failed to operate as intended.

63. As a result of the product defect Plaintiffs and Class Members were and continue to be injured.

64. The Sleeper was in a defective condition and unreasonably dangerous to Plaintiffs and Class Members when the Sleeper left Defendants' control.

65. At all times, the Sleeper was used by Plaintiffs and Class Members in the manner intended.

66. By reason of the foregoing, Plaintiffs and Class Members have incurred damages in an amount to be determined at trial, and are entitled to compensatory and punitive damages.

## VII. Prayer for Relief

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly and severally, as follows:

a. An order certifying the Class as set forth herein, appointing Plaintiffs as Class Representatives and appointing undersigned counsel as counsel for the Class;

b. Economic and compensatory damages in amounts to be determined at trial;

c. Punitive damages;

d. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e. Attorneys' fee and costs; and

f. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38 (b), Plaintiff demands a trial by jury.

Respectfully Submitted,

/s/ Donald W. Stewart
Donald W. Stewart

Attorney for Jason Dane Harris and Rachael Marie Dabbs Harris, as next friend of P.D.H.

OF COUNSEL:

STEWART & STEWART, P.C.
1826 3rd Avenue North, Suite 300
Bessemer, Alabama 35020
Phone: (205) 425-1166
Fax: (205) 425-5959