# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JASON DANE HARRIS and RACHAEL MARIE DABBS HARRIS, as next friend of P.D.H., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FISHER-PRICE, INC., MATTEL, INC., et al.,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND**<br><br>**CV: 13-00076-KOB** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Jason Dane Harris and Rachael Marie Dabbs Harris, as next friend of P.D.H. (the "Harrises"), individually and as representatives of the class defined herein, bring this action against Defendants Fisher-Price, Inc., Mattel, Inc. and Fisher-Price Brands US, as follows:

**I.   Introduction**

1.  The Harrises received a gift of a Newborn Rock 'n Play Sleeper (the "Sleeper") in approximately July, 2012. The Sleeper was purchased at a store owned and operated by Target Corporation and Target Corporate Services Inc. (collectively "Target"). The Harrises bring this action on behalf of themselves and all others similarly situated against Defendants for losses and damages arising out of the mold and other issues with the Sleeper.

2.  On January 8, 2013, Fisher-Price Inc. and the U.S. Consumer Product Safety Commission ("CPSC") announced a voluntary recall of the Sleeper due to mold that develops between the removable seat cushion and the hard plastic frame of the Sleeper.

1

3.      Over 600 reports of mold on the product have been received by Defendants and at least sixteen (16) consumers have reported that their infants have been treated for respiratory issues, coughs and hives after sleeping in the product.

4.      P.D.H. has been treated for respiratory issues after sleeping in the product.

## II.     Parties

5.      The Harrises are Alabama residents who received the Sleeper as a gift.  The Sleeper was purchased at a Target store in Alabama.

6.      As a result of the events described herein, the Harrises have suffered ascertainable losses and damages.

7.      Defendant Fisher-Price, Inc. ("FPI") is a New York corporation with its principal place of business in New York, doing business in the State of Alabama and throughout the United States.  FPI is a subsidiary of Mattel, Inc.

8.      Defendant Mattel, Inc. is a Delaware corporation with its principal place of business in El Segundo, California, doing business in the State of Alabama and throughout the United States.

9.      At all times material hereto, FPI and Mattel, Inc. imported or manufactured entirely, the Sleeper.

## III.    Jurisdiction and Venue

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business.

11. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy.

12. This Court's venue over this action is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claim occurred here.

**IV.  Factual Allegations**

13. FPI is a wholly owned subsidiary of Mattel, Inc.

14. The Sleeper was manufactured and shipped to stores including those in Alabama for purchase for use by parents of infants.

15. The Sleeper is an infant recliner seat. The sleeper is designed for babies up to 25 pounds and is composed of a soft plastic seat held by a metal rocking frame. The Sleeper has a removable, fabric cover that is sold in 14 patterns and color palettes.

16. Since 2009, at least 800,000 Sleepers have been sold in stores and on-line.

17. Mold can develop on the product between the removable seat cushion and the hard plastic frame of the sleeper when it remains wet or moist or is infrequently cleaned.

18. The Defendants knew or should have known that the maintenance instructions delivered with the Sleeper were inadequate to safely maintain the Sleeper.

19. In fact, the Plaintiffs followed all maintenance instructions to no avail.

20. The initial maintenance instructions contained one (1) paragraph on the next-to-last page instructing users of the care and maintenance of the Sleeper.

21. The CPSC has advised that this mold has been associated with respiratory illnesses and other infections.

22. More than 600 complaints have been received as to mold on the Sleeper.

23. At least sixteen (16) consumers have reported that their infants have been treated for respiratory issues, coughs and hives after sleeping in the product.

24. The Sleeper was purchased for use by their son every day since his birth on July 27, 2012.

25. Subsequently P.D.H. was hospitalized at Children's Hospital for 2 or 3 days when he was about 3 months old for Respiratory Syncytial Virus ("RSV") related to Bronchiolitis. He was given breathing treatments, put on oxygen and was placed under monitors for his breathing. His cough has not ceased since then. He has been placed on antibiotics, has had ear and eye infections and has had random vomiting.

## V.   Class Definition.

26. Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

> All persons who bought or use for their infants, since September, 2009, a Newborn Rock 'n Play Sleeper who claim injury and/or damages as a result of the mold that has developed in the device.

27. Excluded from this Class are:

   a. The officers and directors of any of Defendants;

   b. Any judge or judicial officer assigned to this matter and his or her immediate family;

   c. Any legal representative, successor, or assign of any excluded person or entities.

## VI.   Class Action Allegations

28. Plaintiffs' claims are made on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

### A. Numerosity of the Class.

29. On information and belief, the Class consists of hundreds or thousands of individuals and/or businesses who have been legally injured by the sleeper, making joinder impracticable.

### B. Typicality and Commonality.

30. The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, have suffered adverse effects primarily caused by the defects in the Sleeper.

31. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all members of the Class.

### C. Adequacy.

32. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting environmental, mass tort and complex class actions, including actions involving consumer products.

33. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

### D. Predominance of Common Questions of Fact and Law.

34. There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

    a. Whether Defendants caused and/or contributed to the injuries;

b. Whether Defendants were negligent in the design and manufacture of the Sleeper;

c. Whether Defendants were negligent in the shipping and distribution of the Sleeper;

d. Whether the Defendants knew or should have known of the risk of a defect in the Sleeper such as that which causes it to develop mold from normal use;

e. Whether Defendants knew of, or should have utilized; any safety measures to prevent the growth of the mold;

f. Whether Defendants knew or should have known that their activities would cause damage to Plaintiffs;

g. Whether Defendants acted maliciously or with reckless disregard to the risk of mold creation; and

h. The amount of damages Plaintiffs and the Class Members should receive in compensation.

### E. **Superiority.**

35. Absent class treatment, Plaintiffs and Class Members will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Without a class action, individual Class Members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights. Because of the ratio of the economic value of the individual Class Members' claims in comparison to the high litigation costs in consumer products liability cases such as this, few

could likely seek their rightful legal recourse. Absent a class action, Class Members would continue to incur harm without remedy.

37. The consideration of common questions of fact and laws will conserve judicial resources and promote a fair and consistent resolution of these claims.

# FIRST CLAIM FOR RELIEF

## Negligence.

38. The allegations in all previous paragraphs are incorporated by reference as though fully set forth here.

39. Defendants owed a duty to all Plaintiffs and Class Members to exercise reasonable care in the manufacture and distribution of the Sleeper.

40. Defendants had a heightened duty of care to all Plaintiffs and the Class Members because of the great danger associated with the Sleeper and the especially high risk of injury to infants.

41. Defendants breached that duty when they failed to take appropriate steps to ensure the safety and integrity of the Sleeper.

42. As a direct and proximate result of Defendants' failure take appropriate steps to ensure the safety of the Plaintiffs and the Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to diminution of value of real estate, loss of income and other economic loss, and loss of enjoyment of real property.

43. The injuries were caused by the joint negligence of the Defendants.

44. Upon information and belief, Plaintiffs allege that their injuries were the result of Defendants' joint negligence in:

    a.    Failing to properly manufacture and/or distribute the Sleeper;

7

      b. Failing to properly inspect the Sleeper to assure that all parts were fit for their intended purpose;

      c. Acting in a careless and negligent manner:

      d. Failing to promulgate, implement, and enforce proper rules and regulations to ensure the safe manufacture and distribution of the Sleeper, which would have prevented the injuries;

      e. Failing to take appropriate action to avoid or mitigate the defect;

      f. Negligently implementing policies and procedures to safely manufacture and distribute the Sleeper;

      g. Failing to ensure that the Sleeper was free from defects and/or in proper working order;

      h. Failing to timely warn;

      i. Failing to provide appropriate instructions;

      j. Acting in a manner that justifies imposition of punitive damages; and

      k. Such other acts and omissions as will be shown at the trial of this matter.

45. The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of these claims.

46. The injuries to Plaintiffs and the Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger of the mold.

47. Furthermore, the injuries would not have occurred had the Defendants exercised a high degree of care. Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

48. Plaintiffs and the Class Members are entitled to a judgment finding Defendants liable to Plaintiffs and the Class Members for damages suffered as a result of Defendants' acts and omissions.

## SECOND CLAIM FOR RELIEF

### Wantonness.

49. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

50. Defendants owed a duty to all Plaintiffs and Class Members to exercise reasonable care in the manufacture and distribution of the Sleeper.

51. Defendants had a heightened duty of care to all Plaintiffs and the Class Members because of the great danger associated with manufacturing items for infants.

52. Defendants breached their legal duty to Plaintiffs and the Class, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the property and economic interests of others, including Plaintiffs and the Class Members, in the negligent manufacture and distribution of the Sleeper.

53. Defendants knew or should have known that their wanton or reckless conduct would foreseeably result in defects in the Sleeper, causing injuries to the Plaintiffs and Class Members.

54. As a direct and proximate result of Defendants wanton or reckless conduct, Plaintiffs and Class Members have suffered legal injury and damages, in an amount to be proven at trial.

55. Defendants' wanton or reckless conduct, as described herein, entitles Plaintiffs and Class Members to punitive damages.

## THIRD CLAIM FOR RELIEF

### Negligence Per Se.

56. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

57. Defendants' conduct with regard to the manufacture and distribution of the Sleeper is governed by numerous state and federal laws, and permits issued under the authority of these laws.

58. These laws and permits create statutory standards that are intended to protect and benefit Plaintiffs and the Class Members.

59. Defendants' violations of these statutory standards constitute negligence per se under Alabama law.

60. Defendants' violations of these statutory standards proximately caused Plaintiffs' and the Class Members' injuries, warranting compensatory and punitive damages.

## FOURTH CLAIM FOR RELIEF

### Alabama Extended Manufacturer's Liability Doctrine.

61. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

62. Defendants designed, manufactured and/or supplied the Sleeper.

63. The Sleeper was defectively manufactured and/or designed because it failed to operate as intended.

64. As a result of the product defect, Plaintiffs and Class Members were and continue to be injured.

65. The Sleeper was in a defective condition and unreasonably dangerous to Plaintiffs and Class Members when the Sleeper left Defendants' control.

66. At all times, the Sleeper was used by Plaintiffs and Class Members in the manner intended.

67. By reason of the foregoing, Plaintiffs and Class Members have incurred damages in an amount to be determined at trial, and are entitled to compensatory and punitive damages.

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability

68. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

69. Beginning at an exact date unknown to Plaintiffs, but at least since three years prior to the filing date of this action, and as set forth herein, Defendants made representations to the Class, including Plaintiffs, by its advertising, packaging and other means that the Sleeper was designed to induce healthy and restful sleep for infants. Plaintiffs and the Class bought those goods from Defendants.

70. The Sleeper did not induce either healthy or restful sleep for the Plaintiffs.

71. Defendants were merchants with respect to goods of this kind which were sold to Plaintiffs and the Class Members, and in the sale to Plaintiffs and other consumers was an implied warranty that those goods were merchantable.

72. Defendants breached that warranty implied in the contract for the sale of goods in that the Sleeper is in fact not "designed with restful nights in mind," as advertised.

73. As a result of Defendants' conduct, Plaintiffs and other consumers did not receive goods as impliedly warranted by Defendants to be merchantable.

74. As a proximate result of this breach of warranty by Defendants, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Fitness for a Particular Purpose

75. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above

76. Defendants made representations to the Class Members, including Plaintiffs, by its advertising, packaging and other means that the Sleeper was designed to induce healthy and restful sleep for infants. Plaintiffs and the Class Members, in reliance on Defendants' skill or judgment to furnish appropriate goods, bought those goods from Defendants for the aforementioned purpose which was known to the Defendants.

77. Defendants' breached that warranty implied in the contract for the sale of goods in that the Sleeper is in fact not fit for the particular purpose of inducing healthy and restful sleep for infants, as advertised.

78. As a proximate result of this breach of warranty by Defendants, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### Breach of Express Warranty

79. Plaintiffs, on behalf of themselves and the Class Members, reallege each and every allegation set forth above.

80. Defendants are and were at all relevant times a "seller" with respect to "goods," such as the Sleeper, pursuant to the Alabama Uniform Commercial Code.

81. In the course of selling the Sleeper, Defendants expressly represented and warranted in writing that the Sleeper was covered by a "2-YEAR LIMITED WARRANTY" which provided for the following:

> Mattel, Inc. warrants to the original consumer purchaser that this product will be free of defects in material or workmanship for two years (unless specified in alternate warranties) from the date of purchase. If defective, return the product along with proof of the date of purchase, postage prepaid, to Consumer Relations, 636 Girard Avenue, East Aurora, New York 14052, for replacement or refund at our option. This warranty does not cover damage resulting from unauthorized modification, accident, misuse or abuse.....

With this warranty, Defendants were aware that the nature of the warranty and the quality of its workmanship are material rocking play sleeper buyers.

82. In addition, Defendants' website provides an additional warranty:

**100% guarantee**

> We guarantee all Fisher-Price® merchandise. If you are not completely satisfied with your catalog or online purchase, please return it for an immediate exchange, credit, or refund of the product purchase price.

83. Despite the admission that the Sleeper has the propensity to grow mold with knowledge of this defect, Defendants breached the express warranty to replace the Sleeper or refund the purchase price to Plaintiffs and Class Members.

84. Plaintiffs and the Class Members relied upon this express warranty from Defendants when purchasing the Sleeper.

85. Plaintiffs' Sleeper is still within Defendants' two-year product warranty yet Defendants refused to honor its warranty with either a full refund to Plaintiffs or a product replacement.

86. Notice of breach is unnecessary for Plaintiffs and the Class Members, as they did not purchase the Sleeper directly from Defendants.

87. Plaintiffs and the Class Members have incurred damages as described herein as a direct and proximate result of Defendants' failure to honor its express product warranty.

88. Defendants' failure to institute a class-wide refund program for the defective Sleeper, despite knowledge of its design defect, has also caused Plaintiff and Class Members to suffer additional consequential and incidental damages for which they are entitled to reimbursement.

## VII. Prayer for Relief

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly and severally, as follows:

    a. An order certifying the Class as set forth herein, appointing Plaintiffs as Class Representatives and appointing undersigned counsel as counsel for the Class;

    b. Economic and compensatory damages in amounts to be determined at trial;

    c. Costs, expenses and reasonable attorneys' fees;

    d. Refund of amounts paid for the Sleeper;

    e. Punitive damages;

    f. Pre-judgment and post-judgment interest at the maximum rate allowable by law; and

    g. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

                        Respectfully Submitted,

                        /s/ Donald W. Stewart
                        Donald W. Stewart (ASB-8898-A19D)
                        J. Paul Lynn (ASB-2429-S76L)

                        Attorney for Jason Dane Harris and Rachael Marie Dabbs Harris, as next friend of P.D.H.

OF COUNSEL:

STEWART & STEWART, P.C.
1826 3rd Avenue North, Suite 300
Bessemer, Alabama 35020
Phone:   (205) 425-1166
Fax:      (205) 425-5959

## CERTIFICATE OF SERVICE

      I hereby certify that on June 25th, 2013, the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing and that the foregoing document was served via electronic transmission and/or by United States Mail, first class postage prepaid and properly addressed upon the following counsel of record:

James C. Huckaby
Richard E. Smith
Sharon D. Stuart
CHRISTIAN & SMALL, LLP
505 20th Street North, Suite 1800
Birmingham, AL 35203
Telephone: (205) 795-6588
jch@csattorneys.com
res@csattorneys.com
sda@csattorneys.com
*Counsel for Defendants*

Hugh R. Whiting, Esq.
JONES DAY
901 Lakeside Ave.
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
hrwhiting@jonesday.com
*Counsel for Defendants*

Peter Biersteker, Esq.
JONES DAY
51 Lousiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
pbiersteker@jonesday.com
*Counsel for Defendants*

Erik K. Swanholt, Esq.
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, California 90071-2300
Telephone: (213) 489-3939
ekswanholt@jonesday.com
*Counsel for Defendants*

Andrew P. Campbell, Esq.
Stephen D. Wadsworth, Esq.
LEITMAN, SIEGAL, PAYNE & CAMPBELL, PC

420 20th Street North, Suite 2000
Birmingham, Alabama  35203
Telephone: (205) 251-5900
acampbell@lspclaw.com
swadsworth@lspclaw.com
*Counsel for Plaintiffs*

                                                    /s/ Donald W. Stewart
                                                    OF COUNSEL