## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JASON DANE HARRIS and RACHAEL MARIE DABBS HARRIS, *et al.* on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 1:13-cv-00076-KOB **JURY DEMAND** |
| v. | ) ) ) | |
| FISHER-PRICE, INC., *et al*., | ) ) | |
| Defendants. | ) | |

## <u>FOURTH AMENDED CLASS ACTION COMPLAINT</u>

COME NOW the Plaintiffs, in accordance with this Court's order dated February 23, 2015 (Doc. 126), and for their Fourth Amended Complaint state as follows:

## <u>PARTIES</u>

1.     Plaintiffs Jason Dane Harris and Rachael Marie Dabbs Harris, individually and also as next friend of P.D.H., and as class representatives, were residents in the State of Alabama at the time of the filing of the original Complaint.

2.     Plaintiffs Tequila and Justin Childers, individually, and as next friend of K.R.C., and as class representatives, were residents in the State of Alabama at the time of the filing of the original Complaint.

3.     Plaintiffs Nicole Lawley, individually, and as next friend of A.N.J., and

as class representatives were residents in the State of Alabama at the time of the filing of the original Complaint.

4.     Plaintiffs Cynthia and Dinesh Patel, individually, and as next friend to J.F.P., and as class representatives, were residents of the State of Alabama at the time of the filing of the original Complaint.

5.     Plaintiffs Katrina Hankins, individually, and as next friend of K.G.D., and as class representatives, were residents in the State of Oklahoma at the time of the filing of the original Complaint.

6.     Plaintiffs Malarea Robinson, individually, and as next friend of H.M.M., and as class representatives, were residents in the State of Florida at the time of the filing of the original Complaint.

7.     Plaintiffs Amanda Morefield, individually, and as next friend to L.M., and as class representatives, were residents of the State of Idaho at the time of the filing of the original Complaint.

8.     Plaintiffs Nathan and Trulie Berry, individually, and as next friend of E.J.B., and as class representatives, were residents in the Commonwealth of Kentucky at the time of the filing of the original Complaint.

9.     Christopher Myers and Natasha Garza, individually, and as next friend to R.L.M., and as class representatives, were residents of the State of Ohio at the time of the filing of the original Complaint.

10.     Plaintiffs Alicia Cretaro Pierce and David Pierce, individually, and as next friend to G.P., and as class representatives, were residents of the State of California at the time of the filing of the original Complaint.

11.     Plaintiffs Kevin Sanderson and Caitlin Murphy, both individually and as next friend to M.R.S., and as class representatives, were residents of the Commonwealth of Massachusetts at the time of the filing of the original Complaint.

12.     Defendant Mattel, Inc. is a Delaware corporation with its principal place of business in California.  This Defendant, upon information and belief, does business in Alabama, as well as the remaining 49 states in the United States.

13.     Defendant Fisher-Price, Inc., a wholly owned subsidiary of Mattel, is a Delaware corporation with its principal place of business in New York.  This Defendant, upon information and belief, does business in Alabama, as well as the remaining 49 states in the United States.

## **JURISDICTION AND VENUE**

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business.

15.     Venue is proper in this judicial district under 28 U.S.C. §1391 because the Defendants do business throughout this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. At all pertinent times, the Defendants were and are in the business of manufacturing, marketing, advertising, distributing and selling products, including the Sleeper, throughout Alabama and this judicial district, and nationwide, by and through various retailers. The Sleepers that form the basis of this Complaint were purchased from the Defendants and/or from the retailers and placed in the stream of commerce by the Defendants.

### FACTS COMMON TO ALL COUNTS

16.     This matter involves the Rock 'N Play infant sleeper, manufactured and distributed by Fisher Price and Mattel.

17.     The intended users of this product are both parents of infant children and the infant children, who will sleep, rest, play or relax in the "sleeper."

18.     Although some Plaintiffs and class members did not purchase, but were gifted, this product, they are the intended users and third party beneficiaries because they received the product from the defendants' intended mode of distribution and within the stream of commerce that is typical, normal, and ordinary in the defendants' course of business.

19.    It was reasonable for the Defendants to expect Plaintiffs and class members, whether purchasers or gift recipients, to be the ultimate users of Rock 'N Play infant sleeper.

20.    The Rock 'N' Play Sleeper is a device that was developed in 2008 by Fisher-Price and first sold by Fisher-Price on October 2, 2009.  (Doc. 85, Ex. 3, ¶ 7.)  The Sleeper was designed by the Fisher-Price Baby Gear Group in East Aurora, New York.  *Id.* at ¶ 6.  A U.S. patent application for the Sleeper was initially filed on December 22, 2009.  (Doc. 85, Ex. 4.)

21.    The initial design of the Sleeper included a soft fabric hammock. The Fisher Price safety committee rejected this idea early on due to concerns that a hammock would not contain a baby's body in proper position, but instead "could allow the baby's chin to become pressed against his chest, thus restricting his airway." (Doc. 85, Ex. 3, ¶ 7.)  All the Sleeper models at issue in this case are virtually identical.  To eliminate the dangers presented by a hammock design, a plastic insert was developed. Because the Fisher Price safety committee wanted to prevent parents from using the Sleeper without the plastic insert (thus creating a hammock), the plastic insert was placed inside the fabric of the sling to ensure that it could not be removed.

22.    The design team chose fabric for the sling that would be strong and stable, sufficient to support the weight of the infant when used as a  portable

product. (Doc. 85, Ex. 3, ¶ 8.)   The product instructions provided with the Sleeper stated that the "pad [is] machine washable," but never stated that it was necessary to wash or remove the pad, nor did the instructions state that any care was required for the non-removable sling portion of the seat.  (Doc. 85, Ex. 2, p. 8, FP-RNPS-0000849.) Further, the product instructions stated that consumers should "not use bleach" on either the seat pad or frame of the Sleeper, and that instruction is repeated on the product's tags. *Id.*

23.    Despite Defendants' knowledge that the Sleeper would be routinely exposed to moisture (e.g., placing an infant in the sleeper seat would create moist and warm conditions, which are ideal for mold growth), they failed to test the Sleeper itself prior to release in the market for either mold growth or humidity resistance.  *See e.g.*, (Doc. 85, Ex. 9.)

24.    As early as September 2009 Fisher Price began receiving reports of mold growth on the sleeper as well as concerns from consumers regarding possible ailments in their children related to mold growth. (FP-RNPS-0000010).

25.    Without performing any testing, Defendant modified the product design, but this did not resolve the mold issue.

26.    Complaints of mold continued to climb.   (FP-RNPS-0000005-0000069.)   During this time, the Defendants did not notify the public of the increasing reports of mold. (*See e.g.*, Pilarz depo. 27-28.)

27.     In October 2010, Mr. Taton, an employee at Fisher Price, arrived at the following conclusion:

> My guess is that liquid from the baby is collecting in the seat insert. To fix this problem, I would like to add 3 drain holes in the insert as show. Please advise when this modification can be completed. I would like the mold change [for the seat insert] done by the [sic] 11/15.
> (Doc. 85, Ex. 6, p. 3.)

28.     Mr. Taton, then, decided on a design change without performing any tests. Due to excessive inventory, the design modification was not implemented until May of 2011.     (FP-RNPS-0009885).   Insert parts had been sewn with the fabric of the sling together, so there was no way to rework the parts.   As a result the proposed three hole change was not applied to 23,494 existing units.   (FP-RNPS 0009883-85).

29.     On March 16, 2011, Jerry Miller emailed Kitty Pilarz stating that there had been six safety calls for mold and that Bureau Veritas had been called to investigate.  (FP-RNPS 0009358.)

30.     *Consumer Products Safety Commission ("CPSC") first contacted Defendants about mold growth on the Sleeper on November 8, 2011. (Doc. 85, Ex. 3, ¶ 19.)*   At this time, the CPSC informed Defendants that a mold had already been reported to the CPSC directly from a consumer.   *Id.*   Defendants responded

by submitting a §15(b) report, as required by the Consumer Product Safety Act ("CPSA"), approximately 6 weeks later on December 21, 2011. *Id.*

31.     In a November 10, 2011 email, Margo Moulin, a Fisher Price project engineer, writes, "[t]he committee looking into the mold issue proposes changing some of the sling materials…..and ultimately we would like to redesign the product so that there are no areas which must be surface washed, but this will take additional development time." (Doc. 85, Ex. 9.) In December of 2011, Defendants engaged an independent laboratory, Bureau Veritas, to test a fabric swatch from a Sleeper returned by a consumer, and Cladosporium[1] mold growth was detected. (Doc. 85, Ex. 12, p. 3.) The Defendants' Regulatory Project Manager, Don Fest acknowledged the mold is "not visible until/unless the consumer were to remove the seat pad … [so] the area is out of sight/out of mind." (Doc. 85, Ex. 11.)

32.     After the Bureau Veritas' test, the Defendants engaged Dr. Ronald Gots to conduct mold testing. (Doc. 85, Ex. 17.) The CPSC rejected Dr. Gots' opinion, stating it has "serious reservations about the validity of Dr. Got's study." *Id.* The CPSC further stated that Dr. Got's study "lacked adequate controls for reliability" and did "not mirror a realistic pattern of consumer use." *Id*. The CPSC

---

[1] The CPSC responded to a letter from the Defendants stating "Cladosporium is considered one of the most important allergenic species of mold."

concluded that "what was clear was that molds, including the species of Cladosporium, will grow on this product within a few days' time[,]" and Cladopsorium "***should not be in the breathing zone of infants***." *Id.* (emphasis added).

33.     In December 2011, Fisher Price was contacted by the U.S. Consumer Product Safety Commission (hereinafter "CPSC.")

34.     After their investigation, the CPSC concluded that "what was clear was that molds, including the species of Cladosporium, will grow on this product within a few days' time[,]" and Cladosporium "***should not be in the breathing zone of infants***." (Doc. 85, Ex. 17, p. 3) (emphasis added).    Furthermore, Cladosporium is considered by the CPSC "as a highly robust and potent allergen." *Id.*  Moreover, according the CPSC, "[m]old sources must be minimized in the nursery environment, particularly in the breathing zone of newborns and other infants.  Developmentally, this is a very vulnerable time when those young babies can develop allergies and asthma as a result of mold exposure." *Id.* at p. 4.

35.     By September 2012, the CPSC  made a preliminary determination that exposure of mold growth on the "sleeper" presented a substantial hazard under the Consumer Product Safety Act-specifically stating that an infant's exposure to mold growth on the "sleeper" could increase an infants' susceptibility to asthma

and other respiratory illnesses due to their immature immune and respiratory systems. (FP-RNPS-000003).

36. The Consumer Product Safety Commission ("CPSC") was not satisfied with Defendants' Full Report and continued to pose questions throughout 2012, which prompted Defendants to reevaluate the efficacy of the "slots" redesign, because consumers continued to report mold growth on the Sleeper with the redesigned, slotted seats. Defendants' product engineer admitted:

> [] I believe that we have had several reports after the change was made in mid 2011. . . .We have said before that ***we do not believe that this change will have any affect on inhibiting mold growth***. The change was made before we fully comprehended the issue.

(Doc. 85, Ex. 16.) (emphasis added).

37. *Defendants finally agree to voluntary "recall to inspect" for the Sleeper on January 8, 2013, and agree to Corrective Action Plan with the CPSC. (Doc. 85, Ex. 3, p. 21.)* The so-called "recall," however, consists solely of an eighteen page booklet of cleaning instructions available on the Internet, instructing owners to inspect the product for visible mold and, if mold is seen, undertake a laborious cleaning process involves using gloves, protective eye wear, bleach and soaking the product in a "well-ventilated room," which "may result in some color loss of the fabric."

(http://service.mattel.com/us/recall/English%20Rock'nPlaySleeperFinal%20instru

ctions.pdf, last visited on July 24, 2014.)

38.     Each Plaintiff and class member that purchased the Rock 'N Play infant sleeper paid a premium for a product based upon Defendants' false representations and misleading marketing; including marketing that the Rock 'N Play infant sleeper was free from defects, was safe for children, was suitable for period of rest and sleep and, therefore, each Plaintiff and class member was caused to suffer loss attributable to the decreased value of the product itself.

39.     Each Plaintiff and class member that received the Rock 'N Play infant sleeper from a purchaser, was gifted a product for which a premium was paid for a product that was represented to be free from defects and, therefore, was caused to suffer loss attributable to the decreased value of the product itself in addition to having to incur the expense of purchasing a replacement product.

40.     Accordingly, each Plaintiff and class member was injured when the defendants failed to disclose the Rock 'N Play infant sleeper's ability and propensity to grow mold.

## INDIVIDUAL FACTS

### Plaintiffs Jason and Rachel Marie Dabbs Harris Experiences with the Sleeper

41.     They received the sleeper as a gift in or about July 2012.

42.     P.D.H. first used the sleeper in or about July 2012.

43.     They found mold on the Sleeper after Rachel Marie Dabbs Harris heard about the recall.

44.     Rachel Marie Dabbs Harris discontinued use of the Sleeper directly after the mold was discovered.

45.     P.D.H. last used the sleeper in or about January 2013.

**Plaintiff Malarea Robinson's Experiences with the Sleeper**

46.     Malarea Robison received the Sleeper from her mother, who purchased it at a Wal-Mart retailer in November of 2012.  Malarea was with her mother at the time of purchase.

47.     HHM was born on January 27, 2013.

48.     Malarea Robinson began using the Sleeper immediately after HHM's birth and used it exclusively as the child's sleeping instrument for both nighttime sleep and daytime napping.

49.     HHM developed serious breathing problems, coughing, congestion, vomiting, ear infections, and eye infections.

50.     In August of 2013, Malerea Robinson discovered that her Sleeper had developed a substantial amount of mold growth.

51.     Malerea Robinson discontinued use of her Sleeper immediately upon discovering the mold.

52.     Within a few weeks of discontinuing the use of the Sleeper, HHM condition began to improve.

**Plaintiffs Nathan and Trulie Berry's Experiences with the Sleeper**

53.     The Berrys received the Sleeper as a gift in October of 2012.

54.     EJB was born on November 17, 2012.

55.     The Berrys used the Sleeper for EJB for naps and bed time.

56.     On or about December of 2012 EJB started experiencing breathing problems.  EJB has been hospitalized for the breathing problems and has been diagnosed with RSV and pneumonia and has received breathing treatments, albuterol, amoxicillin and steroids.

57.     On or about January of 2013, the Berrys became aware of the CPSC recall and discovered mold on their Sleeper.

**Plaintiffs Tequila and Justin Childers' Experiences with the Sleeper**

58.     The Childers purchased their Sleeper at Target in Tuscaloosa, Alabama in July or August of 2012.

59.     KRC was born on September 4, 2012.

60.     The Childers began to use the Sleeper a week after KRC's birth and used it for nighttime sleeping.

61.     When KRC was a month and a half old he began to exhibit horrible coughing which would cause him to vomit from its intensity.

62. KRC received medical treatment including home nebulizer treatments.

63. KRC was hospitalized with bi-lateral pneumonia.

64. The Chambers discovered substantial mold on their Sleeper after reading about the CPSC recall in the newspaper.

65. They discontinued use of the Sleeper immediately upon finding the mold and KRC slept in a GRACO swing until about September of 2013 at which time KRC began to sleep in his crib.

66. After discontinuing use of the Sleeper, KRC's condition began to improve slowly over a period of about two months.

**Plaintiff Amanda Morefield's Experiences with the Sleeper**

67. Amanda Morefield purchased the Sleeper in June or July of 2012 from Target.

68. LM was born on July 23, 2012.

69. Amanda Morefield began using the Sleeper immediately after LM's birth and used it constantly.

70. In August of 2012, LM began having breathing difficulty while out shopping.

71. LM was rushed to the hospital and was hospitalized for two days.

72.     LM was given nebulizers and Singulair to combat his breathing problems.

73.     In January of 2013, Amanda Morefield noticed the mold on her Sleeper.  She discontinued use of the Sleeper immediately.

74.     After discontinuing use of the Sleeper, LM began to improve gradually.

**Plaintiffs Christopher Meyer and Natasha Garza's Experiences with the Sleeper**

75.     Mr. Meyer and Ms. Garza obtained the Sleeper as a gift from their baby registry at Babies R Us in August of 2012.

76.     RLM was born on September 12, 2012.  Mr. Meyer and Ms. Garza began using the Sleeper for RLM approximately one week after birth for both nighttime sleeping and naps.

77.     At two and one half months old RLM starting having breathing problems.

78.     RLM had to be taken to the Emergency Room for treatment in January of 2013.  RLM developed chronic cough which caused vomiting.  RLM was diagnosed with RSV initially and subsequently with acute bronchiolitis and acute sinusitis.  RLM was treated with Amoxicillin and Albuterol Sulfate,

79. Mr. Meyer and Ms. Garza did not notice the mold on their Sleeper until after RLM was done using it at six months old.

80. Since discontinuing use RLM's symptoms gradually improved.

**Plaintiffs Cynthia and Dinesh Patel's Experiences with the Sleeper**

81. The Patel's purchased their Sleeper in October of 2012 in a Wal-Mart store.

82. JFP was born on July 9, 2012.

83. In November of 2012, the Patel's started using the Sleeper six nights a week and for daytime naps.

84. In November of 2012, JFP began experiencing breathing problems. JFP was diagnosed as having either bronchitis or asthma.

85. The Patel's noticed the mold on their Sleeper approximately two to three days prior to the CPSC recall. The Patel's discontinued using the Sleeper after finding the mold

86. Since discontinuing use JFP's symptoms gradually improved.

**Plaintiffs Kevin and Caitlin Sanderson's Experiences with the Sleeper**

87. MRS was born on June 20, 2012.

88. On or around August 14, 2012, the Sandersons purchased their Sleeper from Buy Buy Baby. They started using the sleeper that same day.

89. The Sleeper was used for nighttime sleeping and naps, and was the only product in which the child slept until approximately January of 2013.

90. Sometime in September of 2012, the Sandersons noticed black spots on the sleeper but they did not know that those spots were mold.

91. The Sandersons washed their sleeper regularly after first noticing the spots.

92. MRS started having breathing problems sometime in late September or early October. MRS was taken to hospital twice due to the breathing problems and was diagnosed with bronchiolitis and RSV.

93. The Sandersons discontinued immediately after finding about the recall in January of 2013.

94. Since discontinuing the use MRS's symptoms improved within approximately two weeks.

**Plaintiffs Alicia Cretaro Pierce and David Pierce's Experiences with the Sleeper**

95. Alicia Cretaro and David Pierce received the Sleeper as a gift at a baby shower at the end of January of 2012.

96. GP was born on February 16, 2012.

97. Alicia Cretaro and David Pierce used the Sleeper for GP from the time that he was brought home for both nighttime sleep and daytime napping. The

Sleeper was used as the exclusive sleeping implement for GP until its used was discontinued in January or February of 2013.

98. Alicia Cretaro discovered mold on the Sleeper sometime in August or September of 2012.

99. She treated the Sleeper with bleach and left it out in the sun to dry in order to treat the mold.

100. On or about October of 2012, GP started having breathing problems. GP had to go to the doctor five to six times. GP was treated with a antibiotics, which did not work, and also had to have nebulizer breathing treatments.

101. In or about January of 2013, after finding out about the recall, Alicia Cretaro and David Pierce discontinued use of the Sleeper.

102. Within approximately two months GP symptoms improved.

103. Within a week or two from discontinuing use AH symptoms began to get better.

**Plaintiff Katrina Hankins' Experiences with the Sleeper**

104. Katrina Hankins purchased the Sleeper from Wal-Mart.com on July 3, 2012.

105. KGD was born on August 14, 2012.

106. Katrina Hankins used the Sleeper exclusively for KGD to sleep in for both nighttime sleep and daytime naps starting on or about September of 2012.

107.   On or about November of 2012, KGD started having breathing problems.  KGD was diagnosed with bronchitis, upper respiratory infections and congestion and was treated with albuterol nebulizer and cough syrup, amoxicillin, and steroid treatments.

108.   On or about January of 2013, after finding out about the CPSC recall, Katrina Hankins, discovered mold on her Sleeper and discontinued use immediately.

109.   Within three to four months of discontinuing use of the Sleeper, KGK symptoms began to get better.

**Plaintiff Nicole Lawley's Experiences with the Sleeper**

110.   Nicole Lawley received the Sleeper as a gift, from her Target registry, on or about June of 2011.

111.   ANJ was born on August 10, 2011.

112.   On or about December of 2011 ANJ began to develop breathing problems.  ANJ was diagnosed with bronchitis and had to have breathing treatments, albuterol, steroids and antibiotics.

113.   In August of 2012, Nicole Lawley discontinued use of the Sleeper because ANJ had grown too big for the Sleeper.

114.   On or about January of 2013, Nicole Lawley was informed of the recall and discovered the mold growth on her Sleeper.

115. ANJ began to recover from the breathing problems after discontinuing use of the Sleeper.

## PROPOSED CLASSES

116. The Plaintiffs propose two Nationwide Classes, one for purchasers and one for gift recipients. Further, as necessary to achieve certification, Plaintiffs propose sub-classes by state to each Nationwide Class. The proposed classes are as follows:

117. **Nationwide Class of Purchasers.** "All individuals in the United States who purchased a Newborn Rock 'N Play Sleeper on or before January 9, 2013." As necessary to achieve certification, Plaintiffs propose the following sub-classes:

    a. **Alabama**: "All residents of the State of Alabama on or before January 9, 2013, who purchased a Fisher Price Newborn Rock 'N Play Sleeper on or before January 9, 2013."

    b. **California**: "All residents of the State of California on or before January 9, 2013, who purchased a Fisher Price Newborn Rock 'N Play Sleeper on or before January 9, 2013."

    c. **Florida**: "All residents of the State of Florida on or before January 9, 2013, who purchased a Fisher Price Newborn Rock 'N Play Sleeper on or before January 9, 2013."

d. **Idaho**: "All residents of the State of Idaho on or before January 9, 2013, who purchased a Fisher Price Newborn Rock 'N Play Sleeper on or before January 9, 2013."

e. **Ohio**: "All residents of the State of Ohio on or before January 9, 2013, who purchased a Fisher Price Newborn Rock 'N Play Sleeper on or before January 9, 2013."

f. **Oklahoma**: "All residents of the State of Oklahoma on or before January 9, 2013, who purchased a Fisher Price Newborn Rock 'N Play Sleeper on or before January 9, 2013."

g. **Kentucky**: "All residents of the Commonwealth of Kentucky on or before January 9, 2013, who purchased a Newborn Rock 'N Play Sleeper on or before January 9, 2013."

h. **Massachusetts**: "All residents of the Commonwealth of Massachusetts on or before January 9, 2013, who purchased a Fisher Price Newborn Rock 'N Play Sleeper on or before January 9, 2013."

118. **Nationwide Class of Gift Recipients.** "All individuals in the United States who acquired a Newborn Rock 'N Play Sleeper on or before January 9, 2013." As necessary to achieve certification, Plaintiffs propose the following sub-classes:

a. **Alabama**: "All residents of the State of Alabama who acquired a

Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

b. **California**: "All residents of the State of California who acquired a Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

c. **Florida**: "All residents of the State of Florida who acquired a Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

d. **Idaho**: "All residents of the State of Idaho who acquired a Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

e. **Ohio**: "All residents of the State of Ohio who acquired a Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

f. **Oklahoma**: "All residents of the State of Oklahoma who acquired a Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

g. **Kentucky**: "All residents of the Commonwealth of Kentucky who acquired a Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

h. **Massachusetts**: "All residents of the Commonwealth of Massachusetts who acquired a Fisher Price Newborn Rock 'N Play Sleeper that was sold on or before January 9, 2013."

119. This action has been brought and may be maintained under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

120. **Numerosity**. Members of the Classes are so numerous that their individual joinder herein is impracticable. Fisher-Price recalled about 800,000 units. (Doc.5-24 at 2.) Each owner of a defective unit is a potential class member. Although the exact number of Class members and their addresses are unknown to Plaintiffs, they are readily ascertainable from Fisher-Price's records. Class members may be notified of the pendency of this action by mail and/or electronic mail, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

121. **Existence and predominance of common questions**. Common questions of law and fact exist as to Plaintiffs and all other members of the Classes and predominate over questions affecting only individual class members. The common questions include:

a. Whether the "Rock 'N Play" is materially defective and what are the defects;

b. Whether Fisher-Price and Mattel knew that the "Rock 'N Play" was

materially defective;

c. Whether Fisher-Price and Mattel knew or should have known that the "Rock 'N Play" would grow mold;

d. Whether Fisher-Price and Mattel omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Classes regarding the Rock 'N Play defects, including, but not limited to mold growth;

e. Whether Fisher-Price and Mattel engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Rock 'N Play Sleepers;

f. Whether Fisher-Price and Mattel engaged in unlawful, unfair, or fraudulent business practices;

g. Whether Fisher-Price and Mattel has a duty to disclose the defective nature of the "Rock 'N Play" to Plaintiffs and Class members;

h. Whether Fisher-Price and Mattel violated the consumer protection statutes applicable to each class;

i. Whether Fisher-Price and Mattel breached their warranty(ies), either express and/or implied;

j. Whether, as a result of Fisher-Price and Mattel's conduct, Plaintiffs

and the Class members have suffered damages;

    k.  Whether as a result of Fisher-Price and Mattel's conduct, Defendants have been unjustly enriched.

    l.  Whether Plaintiffs and the other Class members are entitled to damages and other monetary amounts and, if so, in what amount; and

    m. Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to restitution or injunctive relief.

122.  **Typicality**. Plaintiffs' claims are typical of the Classes because, among other things, Plaintiffs purchased or were gifted from a purchaser a "Rock 'N Play" that suffered the same defects in design and performance.

123.  **Adequacy**. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interest of members of the Classes will be treated fairly and adequately protected by Plaintiffs and their counsel.

124.  **Superiority**. The class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs. The damages suffered by each individual class member do not justify the burden and expense of individual

prosecution of the complex and extensive litigation necessitated by Fisher Price's conduct. Further, it would be virtually impossible for the members of the Classes to individually and effectively redress the wrongs done to them. Even if members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

125.   Plaintiffs seek certification of a nationwide class on all causes of action so certifiable. To the extent that any cause of action must be sub-classed by state, Plaintiffs will plead all causes of action by state.

## COUNT ONE
## VIOLATION OF THE MAGNUSON-MOSS FEDERAL WARRANTY ACT
### (On Behalf of the Nationwide Class against all Defendants)

126.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

127.   Plaintiffs are "consumers," as that term is defined under 15 U.S.C. § 2301(3).

128.   The "Rock 'N Play" in question is a "consumer product," as that term is defined under 15 U.S.C. § 2301(1).

129.   Defendants, are "suppliers" and/or "warrantors," as those terms are defined under 15 U.S.C. § 2301(4), (5).

130.   The subject "Rock 'N Play" were manufactured and sold after July 4th, 1975.

131.    The express warranties provided by the Defendants and/or required by statute to be provided by the Defendants pertaining to the subject "Rock 'N Play" are "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

132.  Plaintiffs have complied with any informal dispute resolution mechanism required by the Defendants prior to filing suit; alternatively, the Defendants did not require or provide in the written warranty an informal dispute resolution mechanism which meets the standards established by the Federal Trade Commission pursuant to 15 U.S.C. § 2310(3).

133.   Defendants breached the implied and written warranties by selling and/or manufacturing a defective product, and failing to repair the defects.

134.   Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty, and allowed the Defendants an opportunity to repair the defect.   Alternatively, the Defendants were aware or should have been aware of the defects at the time of sale and/or manufacture.

135.   Defendants failed to cure the defects and the Plaintiffs have been injured and damaged.

WHEREFORE, Plaintiffs demands judgment against the Defendants, for violation of the Magnuson-Moss Warranty Act.  The Plaintiffs, also, demand from the same defendants any and all (i) interest and costs, (ii) attorneys' fees, (iii) interest from the date of injury, and (iv) the costs of this proceeding.

**COUNT TWO**
**VIOLATION OF THE MAGNUSON-MOSS FEDERAL WARRANTY ACT**
**(On Behalf of the Residents of Alabama, California, Florida, Idaho, Ohio, Oklahoma, Kentucky and Massachusetts against all Defendants)**

136.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

137.   Plaintiffs are a "consumer," as that term is defined under 15 U.S.C. § 2301(3).

138.   Moreover, Plaintiffs are those individuals residing in Alabama, California, Florida, Idaho, Ohio, Oklahoma, Kentucky and Massachusetts.

139.   The "Rock 'N Play" in question is a "consumer product," as that term is defined under 15 U.S.C. § 2301(1).

140.   Defendants, are "suppliers" and/or "warrantors," as those terms are defined under 15 U.S.C. § 2301(4), (5).

141.   The subject "Rock 'N Play" were manufactured and sold after July 4th, 1975.

142.    The express warranties provided by the Defendants and/or required by statute to be provided by the Defendants pertaining to the subject "Rock 'N Play" are "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

143.   Plaintiffs have complied with any informal dispute resolution mechanism required by the Defendants prior to filing suit; alternatively, the Defendants did not require or provide in the written warranty an informal dispute resolution mechanism which meets the standards established by the Federal Trade Commission pursuant to 15 U.S.C. § 2310(3).

144.   Defendants breached the implied and written warranties by selling and/or manufacturing a defective product, and failing to repair the defects.

145.   Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty, and allowed the Defendants an opportunity to repair the defect.   Alternatively, the Defendants were aware or should have been aware of the defects at the time of sale and/or manufacture.

146.   Defendants failed to cure the defects and the Plaintiffs have been injured and damaged.

WHEREFORE, Plaintiffs demands judgment against the Defendants, for violation of the Magnuson-Moss Warranty Act.  The Plaintiffs, also, demand from

the same defendants any and all (i) interest and costs, (ii) attorneys' fees, (iii) interest from the date of injury, and (iv) the costs of this proceeding.

A. **CLAIMS OF RESIDENTS OF ALABAMA**

**COUNT THREE**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Against all Defendants)**

147. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

148. Defendants are a merchant or seller and sold the product or article in question and provided the product in question to the Plaintiffs.

149. The subject Rock 'N Play sleeper was used for the ordinary purposes for which such products are used.

150. The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

151. It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

152. The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

153. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

154. As a result of Defendants' breach of the implied warranty of

merchantability, the Plaintiffs were damaged.

155.  Plaintiffs have suffered and continue to suffer from those damages incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT FOUR
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (Against all Defendants)

156.  Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

157.  Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

158.  It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

159.  Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper,

specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

160. Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

161. Plaintiffs relied on Defendants' judgment and/or skill to select the product in question pursuant to the plaintiffs' particular purpose.

162. Defendant breached the implied warranty of fitness for a particular purpose by selling or allowing the Plaintiffs to use an unsuitable product.

163. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

164. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT FIVE
## BREACH OF EXPRESS WARRANTY
## (Against all Defendants)

165. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

166. Defendants are a merchant, seller, and/or deliverer of the product in

question.

167. Defendants warranted that the subject Rock 'N Play was free from defects.

168. Defendants breached the express warranty by selling and/or delivering a defective product.

169. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

170. As a result of Defendants' breach of warranty, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT SIX
## BREACH OF WARRANTY
### (Against all Defendants)

171. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

172. The Defendants expressly and/or impliedly warranted that the subject Rock 'N Play sleeper involved in the occurrence made the basis of Plaintiffs' Complaint was reasonably fit and suitable for the purpose for which it was intended to be used.

173. Plaintiffs avers that Defendants breached said expressed and/or implied warranties in that said the subject Rock 'N Play sleeper was not reasonably fit and suitable for the purpose for which it was intended to be used, but, to the contrary, said subject Rock 'N Play sleeper at the time it was manufactured, distributed, sold and/or delivered, without substantial modification after leaving the hands of the defendant, was in a dangerously defective and unsafe condition as aforementioned.

174. Plaintiffs further aver that as a proximate result of the aforesaid breach of warranty by said Defendants, Plaintiffs was caused to suffer damages.

175. Such actionable wrongful conduct on the part of Defendants combined and concurred to proximately cause the damages as fully set out herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT SEVEN
## VIOLATIONS OF ALABAMA CONSUMER PROTECTION
### (Against all Defendants)

176. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

177. By manufacturing, selling or delivering products in or to the State of Alabama, Defendants are subject to the Alabama Deceptive Trade Practices Act

(ALA. CODE, 1975 §§ 8-19-1, et seq.), hereinafter "the Act."

178.   The Act prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." ALA. CODE, 1975 § 8-19-5(7).

179.   The Act, also, prohibits "[e]ngaging in any other unconscionable, false, misleading or deceptive act or practice in the conduct of trade or commerce." ALA. CODE, 1975 § 8-19-5(23).

180.   Plaintiffs were proximately damaged by Defendants' violation of these provisions.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable under the Alabama Deceptive Trade Practices Act, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT EIGHT
## UNJUST ENRICHMENT
### (Against all Defendants)

181.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

182.   Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

183. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

184. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

185. Defendants have knowledge of said benefit.

186. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

187. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

**B.     CLAIMS OF RESIDENTS OF CALIFORNIA**

**COUNT NINE**
**SONG-BEVERLY ACT – BREACH OF EXPRESS WARRANTY**
**VIOLATIONS OF CIVIL CODE §§ 1790, et seq.**
**(Against all Defendants)**

188. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

189.   Plaintiffs assert this cause of action on behalf of themselves and the other members of the California Class.

190.   Defendants warranted all of the Rock 'N Plays against defects in material or workmanship at a time when it knew that these products suffered from serious defects and, nevertheless, continued to market, distribute, and sell these products with these express warranties.

191.   As an express warrantor and manufacturer, Defendants had certain obligations under the Song-Beverly Act, and, in particular, Civil Code § 1793.2(b) and (d), to conform the Rock 'N Play to its express warranties.

192.   Defendants are obligated under the terms of its express warranties.

193.   Defendants have breached its express warranties, as set forth above, by selling Rock 'N Plays in a condition that does not meet the warranty obligations undertaken by Defendants, and by failing to repair the defects and/or replace the defective parts in the products.

194.   California Plaintiffs and members of the California Class have used the Rock 'N Play for its intended and ordinary purpose.

195.   California Plaintiffs and members of the California Class have performed each and every duty required under the terms of the express warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct.

196. Defendants have received sufficient and timely notice of the breaches of express warranty alleged herein. Despite this notice and Defendants' knowledge, Defendants refuse to honor its express warranties, even though it knows of the inherent defects in the Rock 'N Play sleepers.

197. In addition, Defendants have received thousands of complaints and other notices from its customers nationwide advising it of the defects in the Rock 'N Play.

198. California Plaintiffs and members of the California Class have given Defendants a reasonable opportunity to cure its failures with respect to its express warranties, and Defendants failed to do so.

199. In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would exclude coverage of the defective Rock 'N Play is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Rock 'N Play is null and void.

200. Defendants have failed to provide to California Plaintiffs and members of the California Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Defendants expressly warranted when California Plaintiffs and members of the California Class purchased their Rock 'N Play.

201. Defendants have not conformed the Rock 'N Play to the express warranty. Defendants are, therefore, required to either pay damages or reimburse the buyer the purchase price and incidental damages under Civil Code §§ 1793.2(d) and 1794.

202. Defendants knew of its obligations under its express warranties to pay for a new Rock 'N Play, as needed, caused by the defects described herein. However, Defendants have willfully refused to pay for a new Rock 'N Play as required under its express warranties. Defendants are, therefore, liable for not only damages, but also a civil penalty under Civil Code § 1794.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT TEN
## VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### California Civil Code §§ 1750, et seq.
### (Against all Defendants)

203. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

204. This cause of action is brought against Defendants pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, et seq.

205.   Defendants' conduct that violated and continues to violate the CLRA, includes without limitation, the following:

(a) Representing that its Rock 'N Play has characteristics, uses, and benefits which they do not have in violation of § 1770(a)(5); and/or

(b) Representing that its Rock 'N Play are of a particular standard or quality, when they are of another, in violation of § 1770(a)(7).

206.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of the CLRA when Defendants failed to disclose and/or concealed material facts from the California Plaintiffs and the other California Sub-Class members, namely, that the Rock 'N Play manufactured and installed by were defective in design, materials and workmanship, and that the Rock 'N Play did or could develop mold resulting in damage the product.  California Plaintiffs and members of the California Class suffered damages as a result.

207.   The information Defendants failed to disclose was material. Had Defendants, timely and fully, disclosed the defective nature of its Rock 'N Play, and that they were subject to a costly replacement or inspection program, consumers would have behaved differently, e.g., by not purchasing the Rock 'N Play.  A reasonable consumer would not expect the Rock 'N Play to develop mold and risk the health of their baby.  Instead, a reasonable consumer would expect the Rock 'N Play to be mold free.

208. After notice, Defendants have refused to cure the defect for the Plaintiffs, individually, or as members or representatives of the class.

209. Plaintiffs seek actual and punitive damages pursuant to Civil Code Section 1780(a)(4).

210. Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to Civil Code Section 1780(d).

211. As a result of Defendant's acts and practices as alleged herein, California Plaintiffs and the other California Sub-Class members suffered injury, and pursuant to Civil Code §§ 1780 et seq., Plaintiffs seek:

(a) An order temporarily and permanently enjoining defendants from continuing the

unfair business practices alleged in this Complaint;

(b) Injunctive relief in the form of a recall or free replacement program;

(c) Actual and punitive damages pursuant to Civil Code Section 1780(a)(4); and

(d) Attorneys' fees and costs pursuant to Civil Code Section 1780(d).

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT ELEVEN
## VIOLATIONS OF CALIFORNIA UNFAIR BUSINESS PRACTICES ACT
### Cal. Bus. & Prof. Code §§ 17200, et seq.
### (Against all Defendants)

212. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

213. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

214. Defendants engaged in unfair competition or unlawful, unfair or fraudulent business practices in violation of the Unfair Business Practices Act when Defendants committed the acts alleged in this Complaint, including the failure to disclose that the Rock 'N Play could develop mold. Defendants further violated the Unfair Business Practices Act when it unlawfully designed, manufactured, formulated, sold, and introduced into the stream of commerce for purchase by the California Plaintiffs, the general public, and the California Sub-Class, the Rock 'N Play containing the defective parts that could develop mold.

215. As a direct and proximate cause of Defendants' unfair methods of competition and unfair or deceptive acts or practices, California Plaintiffs and members of the California Class members have suffered actual damages in that they own Rock 'N Plays containing mold, and that have required, or will require,

California Plaintiffs and members of the California Class members to incur costs to repair and/or replace the Rock 'N Play.

216. Defendants' conduct is ongoing and constitutes unfair, unlawful, and/or fraudulent business acts and practices within the meaning of § 17200.

217. California Plaintiffs and members of the California Class members seek preliminary and permanent injunctive relief against these unfair business practices. Pursuant to §§ 17203 and 17204 of the Business & Professions Code, California Plaintiffs and members of the California Class members are entitled to: (a) an Order requiring Defendants to cease the unfair and unlawful, deceptive acts alleged herein; (b) full restitution of all monies paid to Defendants as a result of its deceptive practices, including but not limited to, disgorgement of all profits derived from its concealment of the defective Rock 'N Play; (c) interest at the highest rate allowable at law; and (d) the payment of their attorneys' fees and costs pursuant to California Civil Code Procedure §1021.5.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

**COUNT TWELVE**
**PRODUCTS LIABILITY**
**NEGLIGENT DESIGN AND FAILURE TO WARN**
**<u>(Against all Defendants)</u>**

218.  Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

219.  The Rock 'N Play sleeper is designed, manufactured, sold and/or distributed by the Defendants.

220.  At the aforementioned time and place, and for some time prior thereto, Defendants were engaged in the business of designing, manufacturing, selling and/or distributing the Rock 'N Play sleeper throughout the United States, including the State of California, for use by certain members of the general public.

221.  During said period of time and for valuable consideration manufacturer designed, manufactured, sold and/or distributed the Rock 'N Play sleeper, which caused the California Plaintiffs and other members of the California Class to suffer damages and losses.

222.  At the aforesaid time and place the subject "sleepers" were used by the Plaintiffs in substantially the same condition as when manufactured, sold and/or distributed, and was being used in a manner that was intended and/or foreseeable by a foreseeable class of persons.

223.  The Rock 'N Play sleeper, however, was not reasonably safe when being used in a foreseeable manner, but, to the contrary, was defective and unreasonably dangerous to the human body, as described herein, when being so used.

224. Defendants herein knew, or in the exercise of reasonable care should have known, that said Rock 'N Play sleeper was unreasonably dangerous to the human body when being so used in a foreseeable manner.

225. Moreover, these Defendants, in manufacturing, distributing and/or selling the Rock 'N Play sleeper had a duty to exercise reasonable care in properly designing the product and a duty to warn consumers and potential consumers of the problem with the product, described herein, as well as to properly repair and/or properly and fully recall its defective product to protect the consumer and potential consumer from a known harm.

226. Defendants breached their duties by being wanton, reckless, careless and negligent in their failure to properly warn, properly recall, and properly repair the Rock 'N Play sleeper.

227. As a direct and proximate result of the Defendants actions and omissions, the California Plaintiffs and members of the California class were proximately caused to suffer damages and losses.

228. The California Plaintiffs and other members of the California class have not committed any contributory negligence.

WHEREFORE, Plaintiffs demands judgment against **all Defendants**, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages

and injuries, together with interest from the date of the incident and the costs of the proceeding.

## COUNT THIRTEEN
## NEGLIGENCE AND/OR WANTONNESS
### (Against all Defendants)

229. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

230. At the aforesaid time and place and for some time prior thereto, Defendants' care for Plaintiffs fell below the applicable standard of care, and negligently and/or wantonly caused the injuries herein with Plaintiffs, and said conduct was the proximate cause of Plaintiffs' injuries as described herein.

WHEREFORE, Plaintiffs demand judgment against **all Defendants** for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding.

## COUNT FOURTEEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against all Defendants)

231. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

232. Defendants are a merchant or seller and sold the product or article in

question and provided the product in question to the Plaintiffs.

233. The subject Rock 'N Play sleeper was used for the ordinary purposes for which such products are used.

234. The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

235. It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

236. The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

237. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

238. As a result of Defendants' breach of the implied warranty of merchantability, the Plaintiffs were damaged.

239. Plaintiffs have suffered and continue to suffer from those damages incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT FIFTEEN
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## (Against all Defendants)

240.    Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

241.    Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

242.    It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

243.    Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

244.    Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

245.    Plaintiffs relied on Defendants' judgment and/or skill to select the product in question pursuant to the plaintiffs' particular purpose.

246.    Defendant breached the implied warranty of fitness for a particular purpose by selling or allowing the Plaintiffs to use an unsuitable product.

247. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

248. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT SIXTEEN
## BREACH OF EXPRESS WARRANTY
## (Against all Defendants)

249. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

250. Defendants are a merchant, seller, and/or deliverer of the product in question.

251. Defendants warranted that the subject Rock 'N Play was free from defects.

252. Defendants breached the express warranty by selling and/or delivering a defective product.

253. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

254. As a result of Defendants' breach of warranty, Plaintiffs were

damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT SEVENTEEN
## UNJUST ENRICHMENT
## (Against all Defendants)

255. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

256. Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

257. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

258. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

259. Defendants have knowledge of said benefit.

260. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

261. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## C.     CLAIMS OF RESIDENTS OF FLORIDA

### COUNT EIGHTEEN
### VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Florida Stat. § 501.201, *et seq.*
### (Against all Defendants)

262.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

263.   At all times relevant to this lawsuit and in connection with this transaction, Defendants were engaged in the conduct of trade or commerce.

264.   At all times relevant to this suit, the Florida Plaintiffs and Florida Class members were consumers.

265.   At all times relevant to this suit, the Florida Plaintiffs and Florida Class members purchased or acquired the subject Rock 'N Play by way of or as a result of a consumer transactions.

266.   Defendants committed unfair and deceptive acts in violation of Florida's Deceptive and Unfair Trade Practices Act by knowingly placing into the

stream of commerce defectively designed Rock 'N Play sleepers which placed children at a risk of sleeping or resting on mold.

267. Further, Defendants have committed unfair and deceptive acts by intentionally concealing from consumers the defect in the Rock 'N Play and failing to inform Rock 'N Play owners of the defect, and by making the false and misleading statements described elsewhere in this Master Consolidated Complaint.

268. Defendants are liable to the Florida Plaintiffs and Florida Class members under Fla. Stat. Section 501.201 et seq. for damages for failure to pay for the cost of repairing/replacing defective Rock 'N Play sleepers.

269. The Florida Plaintiffs and Florida Class members are entitled to compensatory damages, injunctive/equitable relief, and attorneys' fees and costs pursuant to Fla. Stat. Section 501.201 et seq.

270. Florida law takes judicial notice of the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. Section 45(a)(1). See Fla. Stat. Section 501.204(2).

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT NINETEEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Against all Defendants)

271.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

272.   Defendants are a merchant or seller and sold the product or article in question and provided the product in question to the Plaintiffs.

273.   The subject Rock 'N Play sleeper was used for the ordinary purposes for which such products are used.

274.   The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

275.   It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

276.   The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

277.   Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

278.   As a result of Defendants' breach of the implied warranty of merchantability, the Plaintiffs were damaged.

279.   Plaintiffs have suffered and continue to suffer from those damages incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

<h2 style="text-align:center">COUNT TWENTY<br>BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE<br><u>(Against all Defendants)</u></h2>

280.  Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

281.  Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

282.  It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

283.  Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

284.  Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

285.  Plaintiffs relied on Defendants' judgment and/or skill to select the product in question pursuant to the plaintiffs' particular purpose.

286. Defendant breached the implied warranty of fitness for a particular purpose by selling or allowing the Plaintiffs to use an unsuitable product.

287. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

288. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT TWENTY-ONE
## BREACH OF EXPRESS WARRANTY
### (Against all Defendants)

289. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

290. Defendants are a merchant, seller, and/or deliverer of the product in question.

291. Defendants warranted that the subject Rock 'N Play was free from defects.

292. Defendants breached the express warranty by selling and/or delivering a defective product.

293. Plaintiffs gave notice to the Defendants within a reasonable time after

they discovered the breach of warranty.

294. As a result of Defendants' breach of warranty, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

### COUNT TWENTY-TWO
### UNJUST ENRICHMENT
### <u>(Against all Defendants)</u>

295. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

296. Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

297. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

298. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

299. Defendants have knowledge of said benefit.

300. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

301. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

**D.    CLAIMS OF RESIDENTS OF IDAHO**

**COUNT TWENTY-THREE**
**VIOLATIONS OF IDAHO CONSUMER PROTECTION**
**(Against all Defendants)**

302. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

303. By manufacturing, selling or delivering products in or to the State of Idaho, Defendants are subject to the Idaho Consumer Protection Act (§§ 48-603), hereinafter "the Act."

304. The Act prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." § 48-603(7).

305. The Act, also, prohibits "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." § 48-603(17).

306. Plaintiffs were proximately damaged by Defendants' violation of

these provisions.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable under the Idaho Consumer Protection Act, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT TWENTY-FOUR
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against all Defendants)

307. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

308. Defendants are a merchant or seller and sold the product or article in question and provided the product in question to the Plaintiffs.

309. The subject Rock 'N Play sleeper was used for the ordinary purposes for which such products are used.

310. The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

311. It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

312. The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

313. Plaintiffs gave notice to the Defendants within a reasonable time after

they discovered the breach of warranty.

314. As a result of Defendants' breach of the implied warranty of merchantability, the Plaintiffs were damaged.

315. Plaintiffs have suffered and continue to suffer from those damages incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT TWENTY-FIVE
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (Against all Defendants)

316. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

317. Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

318. It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

319. Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

320. Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

321. Plaintiffs relied on Defendants' judgment and/or skill to select the product in question pursuant to the plaintiffs' particular purpose.

322. Defendant breached the implied warranty of fitness for a particular purpose by selling or allowing the Plaintiffs to use an unsuitable product.

323. Plaintiffs gave notice to the Defendants within a reasonable time after he discovered the breach of warranty.

324. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT TWENTY-SIX
## BREACH OF EXPRESS WARRANTY
### (Against all Defendants)

325. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

326. Defendants are a merchant, seller, and/or deliverer of the product in question.

327. Defendants warranted that the subject Rock 'N Play was free from

defects.

328. Defendants breached the express warranty by selling and/or delivering a defective product.

329. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

330. As a result of Defendants' breach of warranty, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT TWENTY-SEVEN
## UNJUST ENRICHMENT
## (Against all Defendants)

331. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

332. Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

333. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

334. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

335. Defendants have knowledge of said benefit.

336. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

337. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## E.   CLAIMS OF RESIDENTS OF MASSACHUSETTS

### COUNT TWENTY-EIGHT
### VIOLATIONS OF MASSACHUSETTS CONSUMER PROTECTION
### UNFAIR AND DECEPTIVE ACTS AND PRACTICES
### (Against all Defendants)

338. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

339. The General Law of Massachusetts prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce ...." M.G.L. c. 93A § 2(a).

340.  The Defendants engaged in unlawful conduct, as described in this Complaint, in conduct described herein in violation of M.G.L. c. 93A.

341.  Plaintiffs were proximately damaged by Defendants' violation of these provisions.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable under the Massachusetts Unfair and Deceptive Acts and Practices law, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT TWENTY-NINE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against all Defendants)

342.  Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

343.  Defendants are a merchant or seller and sold the product or article in question and provided the product in question to the Plaintiffs.

344.  The subject Rock 'N Play sleeper was used for the ordinary purposes for which such products are used.

345.  The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

346.  It was reasonable to expect that Plaintiffs and class members would

use or be affected by the Rock 'N Play sleeper.

347. The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

348. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

349. As a result of Defendants' breach of the implied warranty of merchantability, the Plaintiffs were damaged.

350. Plaintiffs have suffered and continue to suffer from those damages incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT THIRTY
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (Against all Defendants)

351. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

352. Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

353. It was reasonable to expect that Plaintiffs and class members would

use or be affected by the Rock 'N Play sleeper.

354.   Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

355.   Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

356.   Plaintiffs relied on Defendants' judgment and/or skill to select the product in question pursuant to the plaintiffs' particular purpose.

357.   Defendant breached the implied warranty of fitness for a particular purpose by selling or allowing the Plaintiffs to use an unsuitable product.

358.   Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

359.   As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

# COUNT THIRTY-ONE
# BREACH OF EXPRESS WARRANTY
## (Against all Defendants)

360.  Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

361.  Defendants are a merchant, seller, and/or deliverer of the product in question.

362.  Defendants warranted that the subject Rock 'N Play was free from defects.

363.  Defendants breached the express warranty by selling and/or delivering a defective product.

364.  Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

365.  As a result of Defendants' breach of warranty, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT THIRTY-TWO
## UNJUST ENRICHMENT
## (Against all Defendants)

366. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

367. Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

368. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

369. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

370. Defendants have knowledge of said benefit.

371. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

372. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

**F.    CLAIMS OF RESIDENTS OF OHIO**

**COUNT THIRTY-THREE**
**VIOLATIONS OF OHIO CONSUMER PROTECTION**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT**
**(Against all Defendants)**

373.    Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

374.    The Ohio Consumer Sales Practices Act (hereinafter "CSPA") (Ohio Rev. Code Ann. § 1345.01, et seq. applies to the sale or "other transfer" of consumer goods "to an individual for purposes that are primarily personal, family, or [for the] household." Ohio Rev. Code Ann. § 1345.01(A).

375.    The CSPA prohibits "unfair or deceptive act[s] or practice[s] …" Ohio Rev. Code Ann. § 1345.02(A).

376.    The Defendants have engaged in unfair and deceptive practices by: (a) marketing and selling defective Rock 'N Play sleepers; and (b) intentionally failing to timely and fully disclose the defect and risks to consumers and/or users of the product.

377.    Plaintiffs were proximately damaged by Defendants' violation of the Ohio CSPA.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable under the Ohio Consumer Sales Practices Act, the sum to be

determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT THIRTY-FOUR
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against all Defendants)

378.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

379.   Defendants are a merchant or seller and sold the product or article in question and provided the product in question to the Plaintiffs.

380.   The subject Rock 'N Play sleeper was used for the ordinary purposes for which such products are used.

381.   The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

382.   It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

383.   The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

384.   Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

385.   As a result of Defendants' breach of the implied warranty of merchantability, the Plaintiffs were damaged.

386. Plaintiffs have suffered and continue to suffer from those damages incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT THIRTY-FIVE
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## (Against all Defendants)

387. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

388. Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

389. It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

390. Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

391. Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

392. Plaintiffs relied on Defendants' judgment and/or skill to select the product in question pursuant to the plaintiffs' particular purpose.

393. Defendant breached the implied warranty of fitness for a particular purpose by selling or allowing the Plaintiffs to use an unsuitable product.

394. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

395. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT THIRTY-SIX
## BREACH OF EXPRESS WARRANTY
### (Against all Defendants)

396. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

397. Defendants are a merchant, seller, and/or deliverer of the product in question.

398. Defendants warranted that the subject Rock 'N Play was free from defects.

399. Defendants breached the express warranty by selling and/or

delivering a defective product.

400.   Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

401.   As a result of Defendants' breach of warranty, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT THIRTY-SEVEN
## OHIO TORTIOUS BREACH OF WARRANTY
### (Against all Defendants)

402.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

403.   The Defendant expressly and/or impliedly warranted that the subject automobile involved in the occurrence made the basis of Plaintiffs' Complaint was reasonably fit and suitable for the purpose for which it was intended to be used.

404.   Plaintiffs aver that Defendant breached said expressed and/or implied warranties in that said the subject automobile was not reasonably fit and suitable for the purpose for which it was intended to be used, but, to the contrary, said subject automobile at the time it was manufactured, distributed, sold and/or

delivered, without substantial modification after leaving the hands of the defendant, was in a dangerously defective and unsafe condition as aforementioned.

405.   Plaintiffs further aver that as a proximate result of the aforesaid breach of warranty by said Defendant, Plaintiffs were caused to suffer injuries.

406.   Such actionable wrongful conduct on the part of Defendant combined and concurred to proximately cause the injuries and damages as fully set out herein.

WHEREFORE, Plaintiffs demand judgment against Defendant for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT THIRTY-EIGHT
## PRODUCTS LIABILITY
## NEGLIGENT DESIGN AND FAILURE TO WARN
### (Against all Defendants)

407.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

408.   The Rock 'N Play sleeper is designed, manufactured, sold and/or distributed by the Defendants.

409.   At the aforementioned time and place, and for some time prior thereto, Defendants were engaged in the business of designing, manufacturing,

selling and/or distributing the Rock 'N Play sleeper throughout the United States, including the State of Ohio, for use by certain members of the general public.

410. During said period of time and for valuable consideration manufacturer designed, manufactured, sold and/or distributed the Rock 'N Play sleeper, which caused the Ohio Plaintiffs and other members of the Ohio Class to suffer damages and losses.

411. At the aforesaid time and place the subject "sleepers" were used by the Plaintiffs in substantially the same condition as when manufactured, sold and/or distributed, and was being used in a manner that was intended and/or foreseeable by a foreseeable class of persons.

412. The Rock 'N Play sleeper, however, was not reasonably safe when being used in a foreseeable manner, but, to the contrary, was defective and unreasonably dangerous to the human body, as described herein, when being so used.

413. Defendants herein knew, or in the exercise of reasonable care should have known, that said Rock 'N Play sleeper was unreasonably dangerous to the human body when being so used in a foreseeable manner.

414. Moreover, these Defendants, in manufacturing, distributing and/or selling the Rock 'N Play sleeper had a duty to exercise reasonable care in properly designing the product and a duty to warn consumers and potential consumers of

the problem with the product, described herein, as well as to properly repair and/or properly and fully recall its defective product to protect the consumer and potential consumer from a known harm.

415.   Defendants breached their duties by being wanton, reckless, careless and negligent in their failure to properly warn, properly recall, and properly repair the Rock 'N Play sleeper.

416.   As a direct and proximate result of the Defendants actions and omissions, the Ohio Plaintiffs and members of the Ohio class were proximately caused to suffer damages and losses.

417.   The Ohio Plaintiffs and other members of the Ohio class have not committed any contributory negligence.

WHEREFORE, Plaintiffs demands judgment against **all Defendants**, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding.

## COUNT THIRTY-NINE
## UNJUST ENRICHMENT
### (Against all Defendants)

418.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

419. Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

420. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

421. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

422. Defendants have knowledge of said benefit.

423. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

424. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## G.    CLAIMS OF RESIDENTS OF KENTUCKY

### COUNT FORTY
### VIOLATIONS OF KENTUCKY CONSUMER PROTECTION
### VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### (Against all Defendants)

425.  Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

426.  The Kentucky Consumer Protection Act (hereinafter "CPA") (KRS 367.110, et seq.) applies to any trade or commerce for goods "primarily for personal, family, or household purposes …." KRS 367.220(1).

427.  The CPA prohibits "unfair, false, misleading, or deceptive acts or practices …" KRS 367.110(1).

428.  The Defendants have engaged in unfair and deceptive practices by: (a) marketing and selling defective Rock 'N Play sleepers; and (b) intentionally failing to timely and fully disclose the defect and risks to consumers and/or users of the product.

429.  Plaintiffs were proximately damaged by Defendants' violation of the Kentucky CPA.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable under the Kentucky Consumer Protection Act, the sum to be determined by a jury, including, but not limited to, actual damages, plus

reasonable attorney's fees and costs.

## COUNT FORTY-ONE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against all Defendants)

430.  Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

431.  Defendants are a merchant or seller and sold the product or article in question and provided the product in question to the Plaintiffs.

432.  The subject Rock 'N Play sleeper was used for the ordinary purposes for which such products are used.

433.  The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

434.  It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

435.  The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

436.  Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

437.  As a result of Defendants' breach of the implied warranty of merchantability, the Plaintiffs were damaged.

438.  Plaintiffs have suffered and continue to suffer from those damages

incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

**COUNT FORTY-TWO**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(Against all Defendants)**

439. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

440. Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

441. It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

442. Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

443. Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

444. Plaintiffs relied on Defendants' judgment and/or skill to select the

product in question pursuant to the plaintiffs' particular purpose.

445. Defendant breached the implied warranty of fitness for a particular purpose by selling or allowing the Plaintiffs to use an unsuitable product.

446. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

447. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT FORTY-THREE
## BREACH OF EXPRESS WARRANTY
### (Against all Defendants)

448. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

449. Defendants are a merchant, seller, and/or deliverer of the product in question.

450. Defendants warranted that the subject Rock 'N Play was free from defects.

451. Defendants breached the express warranty by selling and/or delivering a defective product.

452.   Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

453.   As a result of Defendants' breach of warranty, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

**COUNT FORTY-FOUR**
**PRODUCTS LIABILITY**
**NEGLIGENT DESIGN AND FAILURE TO WARN**
**(Against all Defendants)**

454.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

455.   The Rock 'N Play sleeper is designed, manufactured, sold and/or distributed by the Defendants.

456.   At the aforementioned time and place, and for some time prior thereto, Defendants were engaged in the business of designing, manufacturing, selling and/or distributing the Rock 'N Play sleeper throughout the United States, including the State of Kentucky, for use by certain members of the general public.

457.   During said period of time and for valuable consideration manufacturer designed, manufactured, sold and/or distributed the Rock 'N Play

sleeper, which caused the Kentucky Plaintiffs and other members of the Kentucky Class to suffer damages and losses.

458.　At the aforesaid time and place the subject "sleepers" were used by the Plaintiffs in substantially the same condition as when manufactured, sold and/or distributed, and was being used in a manner that was intended and/or foreseeable by a foreseeable class of persons.

459.　The Rock 'N Play sleeper, however, was not reasonably safe when being used in a foreseeable manner, but, to the contrary, was defective and unreasonably dangerous to the human body, as described herein, when being so used.

460.　Defendants herein knew, or in the exercise of reasonable care should have known, that said Rock 'N Play sleeper was unreasonably dangerous to the human body when being so used in a foreseeable manner.

461.　Moreover, these Defendants, in manufacturing, distributing and/or selling the Rock 'N Play sleeper had a duty to exercise reasonable care in properly designing the product and a duty to warn consumers and potential consumers of the problem with the product, described herein, as well as to properly repair and/or properly and fully recall its defective product to protect the consumer and potential consumer from a known harm.

462. Defendants breached their duties by being wanton, reckless, careless and negligent in their failure to properly warn, properly recall, and properly repair the Rock 'N Play sleeper.

463. As a direct and proximate result of the Defendants actions and omissions, the Kentucky Plaintiffs and members of the Kentucky class were proximately caused to suffer damages and losses.

464. The Kentucky Plaintiffs and other members of the Kentucky class have not committed any contributory negligence.

WHEREFORE, Plaintiffs demands judgment against **all Defendants**, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding.

## COUNT FORTY-FIVE
## UNJUST ENRICHMENT
### (Against all Defendants)

465. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

466. Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

467. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

468. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

469. Defendants have knowledge of said benefit.

470. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

471. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## H.  CLAIMS OF RESIDENTS OF OKLAHOMA

### COUNT FORTY-SIX
### VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION
### (Against all Defendants)

472. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

473. By conducting business in the State of Oklahoma, Defendants are

subject to the Oklahoma Consumer Protection Act (Okla. Stat. tit. 15, § 751, et seq.)

474.   The Act prohibits a person from knowingly, or with reason to know, representing "that the subject of a consumer transaction is of a particular standard, style or model, if it is of another." Okla. Stat. tit. 15, § 753(7).

475.   The Act, also, prohibits a person from committing "an unfair or deceptive trade practice…." Okla. Stat. tit. 15, § 753(20) & § 752(13).

476.   Plaintiffs were proximately damaged by Defendants' violation of these provisions.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable under the Oklahoma Consumer Protection Act, the sum to be determined by a jury, including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## COUNT FORTY-SEVEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Against all Defendants)

477.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

478.   Defendants are a merchant or seller and sold the product or article in question and provided the product in question to the Plaintiffs.

479.   The subject Rock 'N Play sleeper was used for the ordinary purposes

for which such products are used.

480. The subject Rock 'N Play sleeper was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

481. It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

482. The defect or defects in the Rock 'N Play sleeper proximately caused damages to the Plaintiffs.

483. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

484. As a result of Defendants' breach of the implied warranty of merchantability, the Plaintiffs were damaged.

485. Plaintiffs have suffered and continue to suffer from those damages incurred.

WHEREFORE, Plaintiffs demand judgment against the Defendants for breach of implied warranty of merchantability in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

# COUNT FORTY-EIGHT
# BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## (Against all Defendants)

486.   Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

487.   Defendants are a merchant, seller, custom manufacturer and/or deliverer of the product in question.

488.   It was reasonable to expect that Plaintiffs and class members would use or be affected by the Rock 'N Play sleeper.

489.   Defendants knew or had reason to know that Plaintiffs and class members had a particular purpose for the subject Rock 'N Play sleeper, specifically that, among other things, it should be used in a normal manner for infants (including sleeping and resting for substantial periods of time).

490.   Defendants reasonably expected Plaintiffs to be affected by any problems with the subject Rock 'N Play sleeper.

491.   Plaintiffs relied on Defendants' judgment and/or skill to select the product in question pursuant to the plaintiffs' particular purpose.

492.   Defendant

493.   WHEREFORE, Plaintiffs demand judgment against Defendants for breach of implied warranty of fitness for a particular purpose in an amount to be

decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT FORTY-NINE
## BREACH OF EXPRESS WARRANTY
### (Against all Defendants)

494. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

495. Defendants are a merchant, seller, and/or deliverer of the product in question.

496. Defendants warranted that the subject Rock 'N Play was free from defects.

497. Defendants breached the express warranty by selling and/or delivering a defective product.

498. Plaintiffs gave notice to the Defendants within a reasonable time after they discovered the breach of warranty.

499. As a result of Defendants' breach of warranty, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT FIFTY
## BREACH OF WARRANTY
### (Against all Defendants)

500. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

501. The Defendants expressly and/or impliedly warranted that the subject Rock 'N Play sleeper involved in the occurrence made the basis of Plaintiffs' Complaint was reasonably fit and suitable for the purpose for which it was intended to be used.

502. Plaintiffs aver that Defendants breached said expressed and/or implied warranties in that said the subject Rock 'N Play sleeper was not reasonably fit and suitable for the purpose for which it was intended to be used, but, to the contrary, said subject Rock 'N Play sleeper at the time it was manufactured, distributed, sold and/or delivered, without substantial modification after leaving the hands of the defendant, was in a dangerously defective and unsafe condition as aforementioned.

503. Plaintiffs further aver that as a proximate result of the aforesaid breach of warranty by said Defendants, Plaintiffs was caused to suffer damages.

504. Such actionable wrongful conduct on the part of Defendants combined and concurred to proximately cause the damages as fully set out herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for breach of

warranty in an amount to be decided by a jury, together with interest from the date of injury and the costs of this proceeding.

## COUNT FIFTY-ONE
## UNJUST ENRICHMENT
### (Against all Defendants)

505. Plaintiffs adopt and re-allege only the factual allegations of all paragraphs set forth hereinabove as is fully set out herein.

506. Defendants received payment of a premium price from Plaintiffs and class members based upon their false representations and misleading marketing.

507. Said payments were induced by false representations, deceit, misleading marketing, and/or suppression.

508. But for said false representations, deceit, misleading marketing, and/or suppression, Plaintiffs and class members would not have paid a premium price to Defendants for the Rock 'N Play infant sleeper.

509. Defendants have knowledge of said benefit.

510. Defendants have been unjustly enriched and it would be inequitable for Defendants to retain Plaintiffs and class members' payments.

511. As a result, Plaintiffs and class members have been proximately harmed.

WHEREFORE, Plaintiffs demand judgment against all Defendants for all damages allowable for unjust enrichment, the sum to be determined by a jury,

including, but not limited to, actual damages, plus reasonable attorney's fees and costs.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues in this action.

Respectfully submitted this 2nd day of March, 2015,

/s/ Donald W. Stewart
Donald W. Stewart
One of the Attorneys for Plaintiffs

/s/ Greg W. Foster
Greg W. Foster
One of the Attorneys for Plaintiffs

/s/ T. Dylan Reeves
T. Dylan Reeves
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
Stewart & Stewart, PC
1021 Noble Street, Suite 110
Anniston, Alabama 36201
Phone: (256) 237-9311
Fax: (256) 237-0713
DonaldWStewart5354@yahoo.com

Stewart & Stewart, PC
1826 3rd Ave. N., Ste. 300
Bessemer, AL 35020
Phone: (205) 425-1166
Fax: (205) 425-5959
Greg@stewartandstewar.net
DReeves@stewartandstewart.net

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following, on this the 2nd day of March, 2015:

Richard E. Smith
Sharon D. Stuart
Christian & Small, LLP
505 20th Street North, Suite 1800
Birmingham, AL 35203

Erik K. Swanholt, Esq.
Jones Day
555 S. Flower Street, 50th Floor
Los Angeles, California 90071-2300

Hugh R. Whiting, Esq.
Peter Biersteker, Esq.
Jones Day
51 Lousiana Avenue, NW
Washington, DC 20001-2113

/s/ T. Dylan Reeves
Of Counsel