FILED
2015 Oct-16  PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| JASON DANE HARRIS and RACHEL MARIE DABBS HARRIS, as next friend of P.D.H., on behalf of themselves and all others similarly situated, | ] ] ] ] ] |
| Plaintiffs, | ]   Case No.: 13-cv-00076-KOB |
| v. | ] ] |
| FISHER-PRICE, INC., and MATTEL, INC., | ] ] ] |
| Defendants. | ] ] |

**MEMORANDUM OPINION**

This matter is before the court on Defendants' "Motion to Strike Supplemental Expert Report of David Brookstein, Sc.D." (Doc. 138). For the reasons discussed in this memorandum opinion, the court will GRANT the Defendants' motion.

**I.     Background on Brookstein's Reports**

This litigation stems from the claim that Defendants Fisher-Price and Mattel manufactured and distributed the Rock 'N Play infant sleeper, which developed mold when used by consumers. (Doc. 128, ¶¶ 16, 24). In their most recent amended complaint, Plaintiffs assert 51 counts, alleging violations of various warranties, violations of state consumer protection and unfair competition laws, unjust enrichment, negligence, and products liability claims for negligent design and failure to warn. (Doc. 128). In support of these allegations, Plaintiffs' expert David Brookstein has offered his opinion on the design of the Fisher-Price sleeper.

The report at issue in Defendants' motion to strike is Brookstein's third expert "report."

Brookstein submitted his first "report" in the form of an affidavit on October 31, 2013. (Doc. 138-1). This affidavit contained Brookstein's findings about the fabrics that made up the sleeper and how those fabrics responded when exposed to artificial perspiration. (*Id*.).

When Defendants deposed Brookstein on January 21, 2014, Brookstein testified that except for some additional pictures and a revised CV, his report was complete and accurate. (Doc. 138-2, at 62-63). Brookstein also stated that his affidavit offered no opinion that the sleeper's design was defective (*id.*, at 63); that the sleeper had a propensity to develop biofilm, bacteria, mold, mildew, or foul odors (*id.*, at 63-64); that the manufacture of the sleeper was defective (*id.*, at 66); or that the sleeper was unfit for its intended purpose (*id.*, at 69). Brookstein further testified that he had not devoted any time to work that may lead to opinions beyond those he had expressed in his affidavit, which contained his findings about the fabrics in the sleeper. (*Id*., at 148).

On March 13, 2014, Brookstein submitted an expert report offering his opinions on the design of the sleeper as to the fabrics used in it and comparing that design to alterative designs available at the same time. (Doc. 138-3, at 1). In this report, Brookstein briefly mentioned the hard plastic insert placed inside the fabric of the sleeper (*id.*, at 5-6); however, he did not state that the plastic insert was in any way defective. Rather, in this report, Brookstein expanded on his previous affidavit and focused on the problems with the *fabrics* used by Fisher-Price. Brookstein stated that "Fisher-Price should have sought alternative fabrics that were mold-resistant." (*Id*., at 23). Brookstein discussed at length the antifungal fabrics and finishing agents that were available in the marketplace at the time the sleeper was sold and concluded that "mold resistant or antifungal fabric finishes and fibers were available to Fisher-Price for an alternative design that

would have prevented mold growth . . . ." (*Id.*, at 32).

On May 2, 2015, when Defendants deposed Brookstein regarding this report, he testified that all of his opinions and conclusions were stated in his initial affidavit and second report, and that he had not been asked to form any opinions beyond those expressed in the two reports. (Doc. 138-4, at 25).

Plaintiffs served Brookstein's new "supplemental" report on one of the Defendants' lawyers at 11:15 P.M. on May 29, 2015–the final day for disclosure of expert witnesses under the court's revised scheduling order. (Alleged by Defendants in Doc. 138, ¶ 6; Undisputed by Plaintiffs). Plaintiffs filed a "Notice of Discovery" on this same date, informing the court that they had served the report upon the Defendants. (Doc. 137).

In his "supplemental" report, Brookstein now also offers his opinions on the design of the sleeper as related to its hard plastic shell. Brookstein states that "Fisher-Price had a design that precipitated the growth of mold under the pad and in the liner fabric that encapsulated the rigid plastic shell." (Doc. 138-5, at 11). After purchasing and examining a redesigned Fisher-Price sleeper that did not have fabric covering the plastic shell, Brookstein concludes that the design of the plastic shell was defective and that Fisher-Price should have "either removed the fabric from the rigid plastic shell and/or investigated anti-microbial fabrics that were available at the time of the consumer reports that mold growth first surfaced in May of 2010." (*Id.*, at 19). Brookstein did not find the plastic shell to be defective in either of his previous reports.

## II.    Motion to Strike

Defendants contend that the court should strike David Brookstein's newly-proffered "supplemental" report because: (1) the report fails to comply with the court's instructions at the

3

March 23, 2015 status conference; and (2) the report fails to meet the requirements for supplementation under Fed. R. Civ. P. 26. (Doc. 138, at 1). The court agrees. Brookstein's "supplemental" report does not comply with the court's instructions or meet the requirements for supplementation under the Federal Rules.[1]

A.     Court's Instructions at the March 23 Status Conference

Under its prior scheduling order, the court set the discovery deadline for May 27, 2014. (Doc. 79, at 1). *After* the close of discovery as set by this scheduling order, on August 13, 2014, Plaintiffs moved for leave to amend their Complaint, so that they could "cure any deficiencies or ambiguities in their pleadings." (Doc. 111, at 2). Defendants opposed this motion; however, Plaintiffs assured the court that they would alleviate potential prejudice to Defendants by paying some of the costs of additional discovery. (*See* Doc. 126, at 2). Further, Plaintiffs represented to the court that

> Even though some additional discovery may be necessary because the Fourth Amended Complaint reorganizes causes of action according to the appropriate substantive law of each class's respective state, each cause of action has been the subject of discovery to date and any additional need arises only in situations where applicable law may differ from state to state.

(Doc. 112, at 6). Plaintiffs did not assert that they intended to offer an entirely new theory as the basis for their design defect claims.

Over Defendants' opposition, the court granted the Plaintiffs' motion to amend their complaint and ordered the Plaintiffs to file their Fourth Amended Complaint by March 2, 2015.

---

[1] Defendants also assert that Brookstein's report should be stricken because his opinions are inadmissible under Fed. R. Evid. 407. (Doc. 138, at 1-2). Because the court finds merit in the Defendants' first two arguments, it does not address whether Brookstein's report violates Rule 407.

4

(Doc. 126).

       In their March 16 and 20, 2015 status reports,  the Plaintiffs requested additional

discovery to support the claims  in their Fourth Amended Complaint. (Docs. 132-33). The

Plaintiffs also expressed their desire to add additional experts. (Doc. 133). Defendants opposed

this additional discovery, stating that they believed "there should be no additional discovery,

expert or factual, on issues that were the subject of discovery previously." (Doc. 132, at 3).

       At the March 23, 2015 status conference, the court considered the parties' concerns.

Although the court does not take reopening discovery deadlines lightly, the court agreed that it

would allow the parties to engage in *limited* additional discovery. The court revised its

scheduling order, extending the deadline for Plaintiffs to disclose their expert witnesses and

reports to May 29, 2015 and the deadline for completion of all discovery to August 7, 2015.

(Doc. 136).[2]

       The court reopened the discovery deadlines with specific limitations, which were

discussed at the March status conference. The court told the Plaintiffs that they could add an

additional expert *only* on the failure to warn issue, which was new to the Plaintiffs' Fourth

Amended Complaint. The court instructed the Plaintiffs that they were not to add an additional

expert on the design issue because the design claims were not new to the Fourth Amended

Complaint (*see, e.g.* Third Amended Complaint, Counts 3 and 4, Doc. 54, at 12-13), and

Plaintiffs had already had an adequate amount of time to provide complete expert reports on this

_____

       [2] The court's revised scheduling order did not give the Plaintiffs carte blanche to engage
in any form of discovery they wished so long as it fell within the time frames listed in the order.
Rather, the scheduling order merely set out the *timing* for the additional discovery allowed in
accordance with the limitations set out in the March 23 status conference.

issue.

Plaintiffs acknowledge this instruction in their response to the Defendants' motion to strike. Plaintiffs explain that at the March status conference they "were told that they may disclose a new expert on the issue of warnings but were limited only to Brookstein on design issues." (Doc. 144, ¶ 7).

Plaintiffs conveniently interpret this instruction as allowing them to submit *any* type of additional report by Brookstein. (*See* Doc. 144, ¶11 (asserting that the court "did not limit Plaintiffs' use of Brookstein to supplemental disclosures under Rule 26(e), but allowed 'complete reports under Rule 26(a)(2)(B) from any specially retained or employed experts.'")).

This interpretation, however, is incorrect. First, Plaintiffs have already acknowledged that they were not allowed to submit *any* report – additional design expert reports were prohibited. Second, this interpretation is illogical. The court's intent in limiting Plaintiffs to Brookstein on the design issue was to preclude additional discovery on an issue that had been around since the Plaintiffs' original January 2013 Complaint. (*See, e.g.*, Doc. 1, ¶ 62 ("The Sleeper was defectively manufactured and/or designed . . . .")).

The court finds it unlikely that Plaintiffs thought the court's instruction meant they could submit a new report asserting any new design theory, so long as Brookstein offered it. A substantively new expert report by Brookstein has the same effect as a report from a new expert. Each new report creates the need for additional depositions and discovery on the design issue, and causes the type of problems the court sought to avoid when it placed its limitations on discovery.

Therefore, it seems more likely that the Plaintiffs understood this limitation, but

attempted to manipulate it by not adding a new design *expert*, but merely "supplementing" the reports of their existing design expert, David Brookstein, to assert a new theory of design defect.

In the March status conference, the court also instructed Plaintiffs that they should file a motion, asking the court for permission and stating the need and the scope of their request, before doing any additional discovery. The court further directed the Plaintiffs to review the depositions already taken in this case, as well as the depositions taken in the California case of *Butler v. Mattel, Inc. and Fisher-Price, Inc.*, No. 2:13-cv-306-DSF-SS (C.D. Cal), before requesting additional discovery.

Apparently recognizing the court's instruction that the Plaintiffs should ask for leave to conduct additional discovery, Plaintiffs filed a "Notice of Discovery" on the day they served Brookstein's report upon opposing counsel. This effort was close, but no cigar. Plaintiffs should have sought permission from the court before they served this report upon the Defendants that effectively generated the need for more discovery on a topic for which discovery closed on May 27, 2014. (Doc. 79, at 1).

Plaintiffs failed to comply with the court's instructions at the March status conference in two material ways: (1) they offered an additional expert report on the issue of design defects, in violation of the court's instructions; and (2) they failed to ask for permission to do so.

B.     Supplementation under Fed. R. Civ. P. 26(e)

Additionally, Plaintiffs failed to comply with the Federal Rules of Civil Procedure. Rule 26(e) provides that an expert must supplement his report if he "learns that in some material respect the disclosure or response is incomplete or incorrect." This rule "envisions supplementation when a party's discovery disclosures happen to be defective in some way so that

the disclosure was incorrect or incomplete and, therefore, misleading." *Whetstone Candy Co., Inc. v. Nestle USA,* No. 3:01-cv-415, 2003 WL 25686830, at *1 n. 1 (S.D. Fla. Aug. 23, 2012) (internal citations omitted). The supplementation rule "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009), *aff'd*, 381 F. App'x 968 (11th Cir. 2010). Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation." *Martinez v. Rycars Const., LLC,* No. CV410-049, 2010 WL 6592942, at *2 (S.D. Ga. Dec. 2, 2010) (internal citations omitted).

Plaintiffs have not asserted that Brookstein's report was either incomplete or incorrect. Accordingly, Brookstein's new report is not offered for one of the limited purposes for which Rule 26(e) allows supplementation.

Interestingly, Plaintiffs implicitly acknowledge that Brookstein's supplemental report was not supplemental. In their response to the Defendants' motion to strike, Plaintiffs state that the court "did not limit Plaintiffs' use of Brookstein to supplemental disclosures under Rule 26(e)" and that "Rule 26(a)(2)(B), of course, is not the supplementation rule but is instead the expert disclosure rule." (Doc. 144, ¶¶ 11-12). If Plaintiffs thought they were allowed to submit Brookstein's report as a *new* expert disclosure, the court questions why they would call it *supplemental*.

The court cannot say with certainty whether these inconsistencies show a deliberate manipulation of its instructions or an innocent, but implausible and incorrect, interpretation of its instructions and the Federal Rules. However, the court can say with certainty that, regardless of

8

Plaintiffs' intent, Brookstein's report does not meet the requirements for supplementation under the Federal Rules because Brookstein's report does not "supplement or correct" his earlier disclosures. Instead, it offers a new opinion on the design of the sleeper. Rather than opining only on the antifungal, mold-resistant properties of the fabrics that Defendants should have used in the sleeper, Brookstein now also offers his opinion on the construction of rigid plastic shell used in the sleeper. Therefore, the report is not a proper use of the supplementation rule.

## III.    Conclusion

Because Brookstein's report fails to meet the requirements of Fed. R. Civ. P. 26(e) and because the Plaintiffs have failed to comply with this court's instructions in the March status conference, Brookstein's "supplemental" report is due to be stricken. Therefore, the court will GRANT the Defendants' motion and will STRIKE the supplemental report of David Brookstein, Sc.D. A separate order will be entered along with this opinion.

DONE and ORDERED this 16th day of October.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE